## UNITED STATES v. KHAN.

(District Court, W. D. Pennsylvania. February 25, 1924.)

No. 971.

1. Aliens ☞71½—Certificate of citizenship issued to alien not eligible to citizenship subject to cancellation; certificate "illegally procured."

In Naturalization Act June 29, 1906, § 15 (Comp. St. § 4374), providing for cancellation of a certificate of citizenship on the ground of fraud, or that it was illegally procured, the words "illegally procured" mean contrary to the provisions of law, and apply to a certificate issued to an alien of a race not eligible to citizenship.

2. Aliens ☞71½—Appearance in naturalization proceedings does not estop government to ask cancellation of certificate.

The appearance of the United States in naturalization proceedings, as authorized by Naturalization Act June 29, 1906, § 11 (Comp. St. § 4370), does not create an estoppel which precludes the subsequent cancellation of the certificate under section 15 (Comp. St. § 4374).

In Equity. Suit by the United States against John Bazater Khan, also known as Kaar Bazater, for cancellation of certificate of citizenship. Decree of cancellation.

Walter Lyon, U. S. Atty., and A. M. Replogle, Asst. U. S. Atty., both of Pittsburgh, Pa.

A. M. Levin and Hugh S. Craig, both of Pittsburgh, Pa., for Kahn.

SCHOONMAKER, District Judge. This is an action in equity to set aside, cancel, and declare null and void a certificate of naturalization issued by this court on January 17, 1922. The bill is filed under section 15 of the Act of June 29, 1906 (Compiled Statutes, § 4374), and so much thereof as is necessary for the consideration of the instant case reads as follows:

"Section 15. It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and cancelling the certificate of citizenship on the ground of fraud or on

the ground that such certificate of citizenship was illegally procured."

This application is based on the allegation that the citizenship certificate at issue in this case was illegally procured, and as a basis for that contention sets out that the defendant in this case is a native of Lucknow, India, and a Hindu of full Indian blood, and is therefore not a free white person or a person of African nativity nor of African descent, within the meaning of section 2169 of the Revised Statutes of the United States (Comp. St. § 4358), and that therefore the certificate of citizenship was illegally procured.

[1] The defendant does not deny that he is a native of Lucknow, India, and a Hindu of full Indian blood, but rests his defense in this matter on the allegation that the action of this court in granting a certificate of citizenship to him is res adjudicata, and cannot be inquired into in this proceeding. He contends that the words "illegally procured," used in section 15 of the act of 1906, mean procured by subornation or some other illegal means used to impose on the court, and that it does not cover a certificate issued through error of law, and cites as his authority therefor U. S. v. Luria (D. C.) 184 Fed. 643.

This position cannot be sustained. Under authority of the decision of the United States Supreme Court in the case of U. S. v. Thind, 261 U. S. 204, 43 Sup. Ct. 338, 67 L. Ed. 616, a Hindu of full Indian blood is not a white person within the meaning of Revised Statutes relating to the naturalization of aliens.

The defendant in this case, therefore, was not legally entitled to citizenship papers at the time they were issued to him by this court, and the question we now have for determination is whether or not this citizenship certificate may be revoked under section 15 of the act of 1906. The words "illegally procured," as used in this statute, mean contrary to the provisions of law. United States v. Koopmans (D. C.) 290 Fed. 545.

The right of the United States to proceed under section 15 of the act of 1906 has been thoroughly discussed and decided by the Supreme Court of the United States. In a late case, Mr. Justice McReynolds, delivering the opinion of the court, said (U. S. v. Ginsberg, 243 U. S. 472, 475, 37 Sup. Ct. 422, 425 [61 L. Ed. 853]):

"No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in section 15 and demand its cancellation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these nor render their existence nonessential."

Again the United States Supreme Court, in discussing the very question at issue, the res adjudicata of a citizenship order, held that, even when such an order had been issued in the proceeding to which the United States became a party under section 11 of the same act, nevertheless the certificate could be set aside by an independent proceeding under section 15 of the same act, if it has been illegally procured. U. S. v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321. In this case Mr. Justice Brandeis, delivering the opinion of the court, said (pages 325, 326 [38 Sup. Ct. 121]):

"The remedy afforded by section 15 for setting aside certificates of naturalization is broader than that afforded in equity, independently of statute, to set aside judgments (United States v. Throckmorton, 98 U. S. 61; Kibbe v. Benson, 17 Wall. 624); but it is narrower in scope than the protection offered under section 11. Opposition to the granting of a petition for naturalization may prevail because of objections to the competency or weight of evidence or the credibility of witnesses, or mere irregularities in procedure. A decision on such minor questions, at least of a state court of naturalization, is, though clearly erroneous, conclusive even as against the United States if it entered an appearance under section 11; for Congress did not see fit to provide for a direct review by writ of error or appeal. But, where fraud or illegality is charged, the act affords, under section 15, a remedy by an independent suit."

[2] Again, discussing the same subject-matter on page 327 (38 Sup. Ct. 121), in the same opinion, Mr. Justice Brandeis further says:

"It was the purpose of Congress, by providing for appearances under section 11, to aid the court of naturalization in arriving at a correct decision and so to minimize the necessity for independent suits under section 15. In most cases this assistance could be given best by an experienced examiner of the Bureau of Naturalization familiar with the sources of information. Section 11, unlike section 15, does not specifically provide that action thereunder shall be taken by the United States district at-

torneys; and, if appearance under section 11 on behalf of the government should be held to create an estoppel, no good reason appears why it should not arise equally whether the appearance is by the duly authorized examiner or by the United States attorney. But in our opinion sections 11 and 15 were designed to afford, cumulative protection against fraudulent or illegal naturalization. The decision of the Circuit Court of Appeals is therefore reversed."

There can therefore be no escape from the conclusion in the present case, under the admitted facts, that the defendant was not entitled to certificate of citizenship at the time it was granted to him, and that these facts being now made to appear to the court in the instant case in proceeding under section 15 of the Naturalization Act, we hold that the certificate of naturalization was illegally procured, and should be set aside, canceled, and declared null and void.

An order may be entered accordingly.