### AKHAY KUMAR MOZUMDAR v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. June 16, 1924.)

No. 4229.

**I. Aliens ⬅71½—Certificate of citizenship of person belonging to ineligible class may be set aside.**

Certificate of citizenship to a person of a particular race, members of which are not eligible for naturalization, may be set aside, under Act June 29, 1906, § 15 (Comp. St. § 4374), as illegally procured, notwithstanding that admission to citizenship was granted over objection that petitioner was not a "free white person," within Rev. St. § 2169 (Comp. St. § 4358).

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Aliens ⚏61—High-caste Hindu not "white person," within statute.**

A high-caste Hindu of pure blood is not a "white person," within Rev. St. § 2169 (Comp. St. § 4358), and is therefore not eligible to citizenship.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, White Person.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Action by the United States to cancel the naturalization of Akhay Kumar Mozumdar. From an adverse decree (296 Fed. 173), defendant appeals. Affirmed.

S. G. Pandit, of Los Angeles, Cal., for appellant.

Joseph C. Burke, U. S. Atty., and J. Edwin Simpson, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The agreed statement of facts upon which this case was submitted to and decided by the court below shows, among other things, that the appellant, pursuant to his declaration of intention to become a naturalized citizen of the United States, filed in the District Court for the Eastern District of Washington on the 11th day of July, 1912, his petition to be so naturalized, and, omitting some now unimportant proceedings, the application came on to be heard before that court on February 24, 1913, at which time the applicant "testified under oath that he came from the northern part of India, that he was a high-caste Hindu of pure blood, and that he considered himself a member of the Aryan race," upon which showing the court, over the objection of the naturalization examiner of the government that the petitioner "was not a free white person, within the meaning of section 2169, Revised Statutes of the United States," ordered that the petitioner be admitted to citizenship upon taking the oath prescribed by law.

Subsequently, and on the 28th day of March, 1923, the same naturalization examiner made affidavit that he "verily believes, and therefore states the fact to be, that citizenship in the United States was illegally procured by Akhay Kumar Mozumdar, as held by the Supreme Court of the United States during the October, 1922, term, February 19, 1923, No 202, in the case entitled 'United States, Appellant, v. Bhagat Singh Thind.'" Thereafter, and on the 8th of August, 1923, the United States attorney for the Southern district of California filed on behalf of the government in the court below a petition for the cancellation of the appellant's naturalization, wherein he alleged:

"That your petitioner is informed and believes, and upon such information and belief alleges, that the said order and decree of court and certificate of naturalization were illegally procured from said court in this: That said defendant was at all times herein mentioned a high-caste Hindu of full Indian blood, and not a white person entitled to be naturalized under the provisions of section 2169 of the Revised Statutes of the United States. That prior to the institution of this suit a certain affidavit showing cause therefor was received by the United States attorney for the Southern district of California, made by George W. Tyler, a duly appointed, qualified, and acting examiner of

the Bureau of Naturalization, United States Department of Labor, * * * and praying a cancellation of the order of the court complained of, as well as the certificate of naturalization."

It is from the judgment of the court below, canceling the naturalization of the appellant, that he brought the present appeal.

[1] The provision of the law by virtue of which the United States attorney initiated the proceeding in the court below is that clause of section 15 of the act entitled "An act to establish a Bureau of Immigration and Naturalization, and to provide for a uniform rule for the naturalization of aliens throughout the United States" (34 Stat. pt. 1, p. 601 [Comp. St. § 4374]), reading as follows:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and cancelling a certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

If the certificate annulled was "illegally procured" by the appellant in the District Court for the District of Washington, there was, therefore, clear statutory authority for the action here complained of. "If procured," said the Supreme Court in United States v. Ginsberg, 243 U. S. 472, 475, 37 Sup. Ct. 422, 425 (61 L. Ed. 853), in speaking of section 15 of the statute in question, "when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these, nor render their existence nonessential." And the court there further declared:

"No alien has the slightest right to naturalization, unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in section 15, and demand its cancellation, unless issued in accordance with such requirements."

[2] Nothing more need be said respecting the power of the court below to cancel the appellant's certificate of naturalization; and the correctness of the decision of the court below is established by the recent decision of the Supreme Court in the case of United States v. Thind, 261 U. S. 204, 43 Sup. Ct. 338, 67 L. Ed. 616, where the Supreme Court held that a high-caste Hindu of full Indian blood, born at Amrit Sar, Punjab, India, is not a "white person," within the meaning of section 2169 of the Revised Statutes (Comp. St. § 4358), relating to the naturalization of aliens; the court saying at page 207 (43 Sup. Ct. 339):

"If the applicant is a white person within the meaning of this section, he is entitled to naturalization; otherwise, not. In Ozawa v. United States, 260 U. S. 178, we had occasion to consider the application of these words to the case of a cultivated Japanese, and were constrained to hold that he was not within their meaning. As there pointed out, the provision is not that any particular class of persons shall be excluded, but it is, in effect, that only white persons shall be included within the privilege of the statute. The intention was to confer the privilege of citizenship upon that class of persons whom the fathers knew as white, and to deny it to all who could not be so classified. It is not enough to say that the framers did not have in mind

the brown or yellow races of Asia. It is necessary to go farther and be able to say that, had these particular races been suggested, the language of the act would have been so varied as to include them within its privileges.' Page 195, citing Dartmouth College v. Woodward, 4 Wheat. 518, 644. Following a long line of decisions of the lower federal courts, we held that the words imported a racial and not an individual test, and were meant to indicate only persons of what is popularly known as the Caucasian race. But, as there pointed out, the conclusion that the phrase 'white persons' and the word 'Caucasian' are synonymous does not end the matter. It enabled us to dispose of the problem as it was there presented, since the applicant for citizenship clearly fell outside the zone of debatable ground on the negative side; but the decision still left the question to be dealt with, in doubtful and different cases, by the 'process of judicial inclusion and exclusion.' "

The Supreme Court also there further held that the action of Congress in excluding from admission into this country all natives of Asia within designated limits, including all of India, is evidence of a like attitude toward naturalization of Asians within those limits. See, also, Ozawa v. United States, 260 U. S. 178, 43 Sup. Ct. 65, 67 L. Ed. 199.

The decree is affirmed.