**UNITED STATES v. KRETICOS.**

No. 4893.

Court of Appeals of District of Columbia.

Argued March 3, 1930.

Decided April 10, 1930.

Leo A. Rover and Rebekah S. Greathouse, both of Washington, D. C., for the United States.

S. McC. Hawken and Geo. F. Havell, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and GORDON, Associate Justice of the Supreme Court of the District of Columbia.

GORDON, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District of Columbia admitting the appellee, John N. Kreticos, to citizenship.

On July 2, 1921, the appellee, a native of Greece, arrived in the United States on board the steamer "King Alexander." He deserted his ship and on April 12, 1922, filed a declaration of intention of becoming a citizen, in the common pleas court of Berks county, Pa. He filed a petition for naturalization in the Supreme Court of the District of Columbia on March 28, 1928, and filed therewith a certificate issued by the Department of Labor labeled "Certificate of Arrival" on the regular form of the Department of Labor for such certificates but containing the following statement: "Data taken from crew list. Deserting seaman, no record of admission for permanent residence."

At the naturalization hearing the naturalization examiner objected to the granting of the certificate of naturalization on the ground that the appellee was in the United States illegally, in that he was a deserting seaman and that the document used as a certificate of arrival showed on its face that it could not be used as such. This objection was overruled and an exception noted, and it is from this ruling and from the order granting the certificate of naturalization that this appeal is taken.

Section 4 of the Naturalization Act (June 29, 1906), 34 Stat. 596 (8 USCA § 372), declares: "That an alien may be admitted to become a citizen of the United States in the following manner and not otherwise."

Section 4, subd. First (8 USCA § 373), declares that he shall file his declaration of intention and what said declaration shall contain.

Section 4, subd. Second (8 USCA § 379), declares that not less than two nor more than seven years after he has made such declaration of intention he shall make and file his petition for naturalization, setting forth certain requirements, among them that:

"The petition shall also be verified by the affidavits of at least two credible witnesses, who are citizens of the United States, and who shall state in their affidavits that they have personally known the applicant to be a resident of the United States for a period of at least five years continuously, and of the State, Territory, or district in which the application is made for a period of at least one year immediately preceding the date of the filing of his petition, and that they each have personal knowledge that the petitioner is a person of good moral character, and that he is in every way qualified, in their opinion, to be admitted as a citizen of the United States.

"At the time of filing his petition there shall be filed with the clerk of the court a certificate from the Department of Commerce and Labor, if the petitioner arrives in the United States after the passage of this Act, stating the date, place, and manner of his arrival in the United States, and the declaration of intention of such petitioner, which certificate and declaration shall be attached to and made a part of said petition."

Section 4, subd. Fourth (8 USCA § 382), declares: "It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the State or Territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution, shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record."

Section 2 of the Immigration Act (February 5, 1917), 39 Stat. 875 (8 USCA § 132), declares: "That there shall be levied, collected, and paid a tax of $8 for every alien, including alien seamen regularly admitted as provided in this Act, entering the United States. * * *"

Section 16 (8 USCA § 152), declares that "all aliens arriving at ports of the United States shall be examined by not less than two such medical officers at the discretion

of the Secretary of Labor, and under such administrative regulations as he may prescribe. * * *"

The Act to Limit the Immigration of Aliens into the United States (May 19, 1921), 42 Stat. 5, declares:

"Sec. 2. (a) That the number of aliens of any nationality who may be admitted under the immigration laws to the United States in any fiscal year shall be limited to 3 per centum of the number of foreign-born persons of such nationality resident in the United States as determined by the United States census of 1910. * * *

"(d) When the maximum number of aliens of any nationality who may be admitted in any fiscal year under this Act shall have been admitted all other aliens of such nationality, except as otherwise provided in this Act, who may apply for admission during the same fiscal year shall be excluded. * * *

"Sec. 5. That this Act shall take effect and be enforced 15 days after its enactment (except sections 1 and 3 and subdivisions (b) and (c) of section 2, which shall take effect immediately upon the enactment of this Act), and shall continue in force until June 30, 1922, and the number of aliens of any nationality who may be admitted during the remaining period of the current fiscal year, from the date when this Act becomes effective to June 30, shall be limited in proportion to the number admissible during the fiscal year 1922."

The law fixes residence as one of the primary jurisdictional requirements. In view of the manner in which appellee entered the United States it must be determined whether the minimum period of five years' continuous residence prescribed by section 4, subdivision Fourth of the Naturalization Act, has been complied with, and whether he is entitled to be naturalized on a certificate of irregular entry.

The mere landing in this country without regular entry does not constitute such beginning to reside, upon which can be based a permanent, continuous residence; and an alien cannot begin a permanent residence except by entering in accordance with the immigration laws.

No alien has a right to naturalization unless all statutory requirements are complied with. In a case in which a naturalization certificate was canceled because the hearing upon the petition was held in the chambers of the judge adjoining the courtroom,

instead of in open court, as required by law, the Supreme Court said: "No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it, as provided in § 15, and demand its cancellation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these nor render their existence nonessential." United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 425, 61 L. Ed. 853. To the same effect see, United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321; Maney v. United States, 278 U. S. 17, 49 S. Ct. 15, 73 L. Ed. 156; Ex parte Eberhardt (D. C.) 270 F. 334.

■ Appellee's entrance into the United States was a mere landing and he has never begun a residence here, and he cannot begin to reside continuously except by entering in accordance with the requirements of the immigration laws.

Minor children of naturalized citizens, although born abroad before the naturalization of their parents, become ipso facto citizens of the United States from the time they begin to reside permanently in the United States. Act March 2, 1907, § 5, 34 Stat. 1229 (8 USCA § 8).

In Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 51 L. Ed. 428, the petitioner, formerly a subject of the Sultan of Turkey, became a naturalized citizen of the United States. One of his children, born in Turkey just prior to his leaving that country, arrived at Boston subsequent to his naturalization and while the child was still a minor, but was debarred from landing by the United States Commissioner of Immigration because she was found to have a dangerous and contagious disease. The court said that the minor was debarred from entering the United States by the act of the authorized officials and never having legally landed of course could not have dwelt within the United States.

In Kaplan v. Tod, 267 U. S. 228, 45 S. Ct. 257, 69 L. Ed. 585, the appellant was born in Russia, and in 1914, when she was about thirteen years of age, she was brought to this country, where her father already was, by her mother. Upon examination she was certified to be feeble-minded and was ordered to be excluded and deported. Because of lack of facilities at the time for deportation she was kept at Ellis Island for almost a year. She was later handed over to the Hebrew Sheltering and Immigrant Aid Society upon its undertaking to accept custody of the child until she could be deported safely. The society allowed her to live with her father, which she did until 1925. On December 14, 1920, her father was naturalized, she being then about 19. Mr. Justice Holmes, in delivering the opinion of the court, said: "But it is said that she became a citizen by the naturalization of her father while she was a minor and in this country, Rev. St. § 2172 [8 USCA § 7] and that she cannot be deported upon a warrant issued more than five years after her entry into the United States. * * * Naturalization of parents affects minor children only 'if dwelling in the United States.' Rev. St. § 2172. The appellant could not lawfully have landed in the United States in view of the express prohibition of the Act of 1910 just referred to, and until she legally landed 'could not have dwelt within the United States.' Zartarian v. Billings, 204 U. S. 170, 175, 27 S. Ct. 182, 184, 51 L. Ed. 428. Moreover while she was at Ellis Island she was to be regarded as stopped at the boundary line and kept there unless and until her right to enter should be declared. * * * She never has been dwelling in the United States within the meaning of the Act. Still more clearly she never has begun to reside permanently in the United States."

In United States v. Rodgers, 185 F. 334, 338 (C. C. A. 2d Cir.), the court said: "Under the act of March 2, 1907, citizenship is only conferred upon the minor child of a naturalized parent when (or if) he has begun to reside permanently in the United States. Until then, he is an alien, and he cannot begin to so reside if he belongs to a class of aliens debarred from entry into the country by the act to regulate the immigration of aliens into the United States."

In United States v. Rodgers (D. C.) 182 F. 274, 276, affirmed in (C. C. A.) 185 F. 335, the Court said: "He has never begun a permanent residence here, and his citizenship has not yet begun, and cannot begin until he begins a permanent residence by entering in accordance with the requirements of the immigration laws, as any other alien is required to do." See, also, United States v. Tod (C. C. A.) 297 F. 385.

Naturalization was refused to petitioners, alien seamen, because their residence was based on illegal entry in the following cases: In re Jensen (D. C.) 11 F.(2d) 414;

Ex parte Domenici (D. C.) 8 F.(2d) 366, 367; Petition of Connal (D. C.) 8 F.(2d) 374, 375; Petition of Reader (D. C.) 21 F. (2d) 877; In re Olsen (D. C.) 18 F.(2d) 425.

In the Jensen Case the petitioner filed a paper labeled certificate of arrival, similar to that filed by the appellee, issued by the Department of ·Labor, with the following notation: "Jens Marinus Jensen arrived at the port of Norfolk, Virginia, November 20, 1920, S. S. California (Danish). Deserting seaman—did not pay head tax."

The court in denying citizenship to Jensen said: "Unless the lawful arrival and formal admission, after inspection by the Immigration Bureau, is affirmatively shown, the residence of an alien, either actual or constructive, is presumptively unlawful, and vitiates his proof of residence, declaration of intention, and petition for naturalization ab initio. Such an alien is incapable of acquiring a legal, bona fide residence upon which to predicate a valid declaration of intention under the Naturalization Law, and not entitled to favorable consideration on a petition for naturalization."

In Ex parte Domenici, one Domenici, in 1919, entered the United States as a deserting seaman and remained in this country until March, 1925. After a temporary absence he wished to enter the United States as an alien who had been lawfully admitted to enter the United States and resided therein for five years returning within six months after a temporary absence. 43 Stat. 155, § 4, subd. (b), 8 USCA § 204(b). In announcing the opinion of the court, Circuit Judge Anderson said: "But Domenici was never admitted as an immigrant. In December, 1919, he landed as a seaman. Under sections 32, 33, and 34 of the act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼r–4289¼s), and the rules made pursuant thereto, if he remained here continuously, as the record indicates, he was

here illegally; under section 34 he might, at any time within three years after so landing, have been deported. If in his favor it be assumed that the power to deport ended with the three years, and that thereafter his presence was lawful (a proposition difficult to sustain), such alleged lawful presence was only about two years." ·

In the Connal Case an alien seaman was permitted to land as an alien intending to reship (43 Stat. 154 [8 USCA § 203]). Citizenship was denied, the court saying: "* * * This court has a right to look to said certificate to ascertain whether the alien was admitted to this country as a permanent resident (United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321), and when it finds that he was not so admitted, but was discharged · by the immigration authorities only to reship, then the so-called certificate of arrival is not the certificate of arrival contemplated by the statute as a basis for the petition for admission to citizenship, and it clearly appears that the declaration of intention supporting the petition was invalid, in that at the time of its filing the alien was not a legal resident of the United States."

In the Reader Case the petitioner, while serving as a seaman, on a boat calling at a United States port, deserted the boat and entered the United States without the payment of head tax or inspection by the immigration authorities as required by the immigration law. He declared his intention to become a citizen March 3, 1920. The court held that he was never admitted into the United States and hence that his declaration of intention was invalid, and insufficient upon which to base a petition for naturalization.

Naturalization laws must be interpreted and construed in connection with the immigration laws. In re Demanis (D. C.) 21 F. (2d) 876; Petition of Reader, supra; Petition of Connal, supra; In re Jensen, supra.

The judgment is reversed.