### TAGUCHI v. CARR et al.
#### No. 6836.

Circuit Court of Appeals, Ninth Circuit.
Dec. 19, 1932.

C. S. Price, of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Milo E. Rowell, Asst. U. S. Atty., both of Los Angeles, Cal. (Harry B. Blee, Immigration Service, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from an order of the District Court discharging a writ of habeas corpus and remanding the appellant to the custody of the United States Immigration Service for deportation.

Riichi Taguchi, the appellant, is a native and subject of Japan and is of the Japanese race. The records show that he arrived in the United States at the port of Seattle, Wash., about August 6, 1918, as a member of the crew of the steamship Kongosan Maru, and that he deserted that vessel at Seattle on August 14, 1918. It is admitted that his entry into the United States was unlawful. He remained continuously in this country, following different occupations, until about July, 1931, when he signed on the American fishing boat Mesklectia, at San Pedro, Cal., to engage in fishing on the high seas and in Mexican waters. It appears that this vessel proceeded southward along the Mexican coast in the channel between Santa Margarita Island and the mainland of Mexico, for the purpose of fishing. Santa Margarita Island is alleged to be approximately 650 miles in a southerly direction from the United States-Mexican international boundary line, and near the extremity of Magdalena Bay.

In appellant's petition for a writ of habeas corpus he alleges: "That while on a fishing trip on this boat and during a heavy storm the fishing boat collided with another and sank off Santa Margarita Island, Lower California, Mexico; that in order to save the petitioner's life the captain instructed him to land on said island, where he remained until the American tug boat Homer picked up the petitioner and brought him to San Pedro, California, arriving on or about the 27th day of September, 1931."

The Board of Special Inquiry at San Pedro, Cal., after hearing, denied appellant admission to the United States and held him subject to deportation. The specific grounds

upon which appellant was denied admission are that "he is an immigrant alien not having in his possession an unexpired immigration visa as required by the Immigration Act of May 26, 1924; § 13 (a) (1), 8 USCA § 213 (a) (1); that he is an alien ineligible to citizenship as described by section 13 (c) of that Act, and that he is attempting to enter the United States in violation of the President's Proclamation of February 24, 1913."

On appeal to the Department of Labor, the decision of the Board of Special Inquiry was affirmed.

Appellant contends that, since he had resided in the United States for thirteen years prior to the time he departed therefrom on the steamship Meskleetia, he had acquired a fixed status to live in the United States; and counsel for the government admit that the statute of limitations would have barred the immigration authorities from arresting and deporting appellant because he had so remained continuously in the United States for that period of time. The government maintains, however, that, when appellant departed from the United States, and remained on Mexican soil for ten days, or more, he broke the continuity of his residence in the United States, and his earlier acquired so-called "fixed status" to live in the United States terminated; and, further, that he "subjected himself to the operation of the clauses of the act that related to the exclusion and deportation of aliens, the same as if he had had no previous residence or domicil in this country. * * *" Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 491, 58 L. Ed. 967.

Appellant strenuously insists that he had no intention of landing on foreign soil; that he was compelled to do so because of the storm and collision above referred to; and that therefore he is not subject to deportation.

This situation might well appeal to us if we had any discretion in the matter, but we have none; and the sole question is whether or not appellant comes within the provisions of the immigration laws.

Unfortunately, appellant is the author of his own misfortune. As a fisherman, he must have known the perils of the sea, and in making the voyage into foreign waters he knew that he might not be able to return to the United States. In fact, he testified at the hearing: "I fully understood that touching any foreign land would make it difficult for me to return to the United States and it would be against the immigration laws, but during a heavy storm our ship collided with another and sank off Santa Margarita Island, Lower California, Mexico. It was either life or death, and the captain instructed us to land on Santa Margarita Island, and everything would be all right. I have nothing else to offer."

Under the immigration laws and the interpretation placed thereon by the Supreme Court, we are compelled to hold that, notwithstanding the misfortune which befell appellant, he was coming from a foreign country and therefore was subject to the immigration laws the same as though he had never resided in the United States. United States ex rel. Leo Stapf, Petitioner, v. Edward Corsi, Commissioner of Immigration, 53 S. Ct. 40, 77 L. Ed. ——, decided by Supreme Court November 7, 1932.

Affirmed.