## BEALE v. UNITED STATES.
### No. 9787.

Circuit Court of Appeals, Eighth Circuit.
June 12, 1934.

738

Bruce J. Broady, of St. Paul, Minn., for appellant.

George F. Sullivan, U. S. Atty., of St. Paul, Minn. (George A. Heisey, Asst. U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order and judgment of the lower court denying appellant's application for naturalization and dismissing his petition.

Petitioner was born in London, England, June 30, 1890. He entered the United States at Detroit, Mich., June 20, 1916. On March 16, 1926, he filed his declaration of intention to become a citizen of the United States in the superior court of Fairfield county, Conn., and on June 14, 1932, he filed his petition for naturalization in the United States District Court for the District of Minnesota. That court, after hearing, denied the application because it was unable to find affirmatively that the applicant was attached to the principles of the Constitution, or that he was willing to take the prescribed oath without qualification or reservation. This conclusion of the court is based upon petitioner's refusal definitely to state that if necessary he was willing to take up arms in defense of this country.

In the preliminary form for petition for naturalization, the following questions, among others, appear:

"23. Have you read the following oath of allegiance (which is then quoted)? And are you willing to take this oath in becoming a citizen?

"24. If necessary, are you willing to take up arms in defense of this country?"

In answer to question 23, he answered, "Yes." In answer to question 24, he answered, "As per Paris Pact (please see explanation attached)." The explanation attached reads as follows: "In order that no question may arise concerning the Oath of Allegiance, I add this explanatory word. I am conscientiously opposed to war as a method of settling international controversies. I understand that, since the Kellogg Peace Treaty (the Pact of Paris) came into effect as international law, one's allegiance to the Constitution is not prejudiced by his unwillingness to accept a hypothetical obligation in regard to the now delegalized institution of war. In the Pact of Paris, which was negotiated by our Government, and proclaimed by President Hoover on July 24, 1929, the United States, jointly with other nations of the world, condemned recourse to war, renounced war as an instrument of national policy, and agreed never to seek the settlement or solution of any international dispute or conflict except by pacific means. I fully approve and support the Kellogg Peace Treaty, the object of which was officially stated by Secretary Kellogg when he declared that 'the United States desires to see the institution of war abolished,' and offered to conclude this treaty for that purpose. I understand that, under the Constitution, this Treaty is now part of the supreme law of the land. As a conscientious objector to war I believe that I am patriotically in accord with the Constitution, and I promise to defend it against all enemies."

Later, petitioner amended this statement by substituting for the last sentence the following sentence: "I am patriotically in accord with the Constitution and I promise to defend it against all enemies," thereby abandoning the statement that he was a conscientious objector to war.

Upon the hearing, he was interrogated by the presiding judge as follows:

"Q. Have you any objection to my asking you some further questions supplementary to those that have heretofore been asked of you by the Naturalization Official? A. No, sir.

"Q. I should like, in so far as you can, to have you first answer the questions by 'yes,' or 'no,' and then if you desire you may make such elaboration on your answers as you see fit. Is it your view that the Constitution has been modified by the Pact of Paris? A.

The statutory requirements for naturalization have been modified by the Pact of Paris.

"Q. Do you believe irrespective of the stress or necessity existing you would possess the right if admitted to citizenship to withhold from the Government military service when your best judgment suggested you so do? A. I can't anticipate that situation, Your Honor. We are dealing with the term 'military service', naturally an institution which is now outlawed.

"Q. Assuming that this Government observes all provisions of the Pact of Paris and assuming further some other nation does otherwise and in fact by armed force attacks this country, under such circumstances would you bear arms if called upon so to do? A. I believe that allegiance to and support of the Constitution and laws of the United States demands I do not anticipate that other signatories to that Pact with the United States will break their word any more than I anticipate the United States will break its word.

"Q. I would gather in the light of the answers which you have given that the position heretofore taken by you in the first instance in answer to Question 24, and as thereafter expressed in the two briefs which you filed with me, is maintained by you at this time? A. Yes, sir."

Considering petitioner's written explanation, and his answers to the interrogatories propounded by the trial judge, the lower court was warranted in concluding that he would not take up arms in defense of this country if necessity therefor arose.

It is argued by counsel for appellant that: "Nowhere, does petitioner make the statement that he would be unwilling to bear arms under any circumstances. That is an unwarranted assumption on the part of the government." The burden of proof, however, was upon petitioner, and it seems perfectly clear that he not only avoided stating affirmatively that he would take up arms in defense of this country, but he must have understood that the court must inevitably conclude from his entire examination, especially in view of the statement made in his first written explanation that he was a "conscientious objector to war," that he would not, even though necessity arose, take up arms in defense of this country.

It is the province of Congress to prescribe the conditions upon which the privilege of citizenship may be granted. The Supreme Court of the United States, in United States v. Schwimmer. 279 U. S. 644, 49 S. Ct. 448, 450, 73 L. Ed. 889, said:

"That it is the duty of citizens by force of arms to defend our government against all enemies whenever necessity arises is a fundamental principle of the Constitution.

"The common defense was one of the purposes for which the people ordained and established the Constitution. * * * We need not refer to the numerous statutes that contemplate defense of the United States, its Constitution and laws, by armed citizens."

The doctrine of this case was reaffirmed by the Supreme Court in United States v. Macintosh, 283 U. S. 605, 51 S. Ct. 570, 75 L. Ed. 1302. The last-noted case was decided May 25, 1931, and it was by a divided court. But, having in mind that Congress is vested with the power and authority to fix and determine the conditions upon which the privilege of citizenship may be conferred, it is worthy of note that there have been no amendments affecting the provisions of the statutes relating to the requirements for admission to citizenship. We must conclude, therefore, that these statutory requirements as construed by the Supreme Court have congressional sanction and approval.

We are of the view that the instant case is ruled by United States v. Macintosh and United States v. Schwimmer, supra; and the order appealed from is therefore affirmed.