### UNITED STATES v. PARISI.
#### No. 2471.

District Court, D. Maryland.
Aug. 11, 1938.

Bernard J. Flynn, U. S. Atty., and C. Ross McKenrick, Asst. U. S. Atty., both of Baltimore, Md.

Joseph Allen, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the United States has filed its bill in equity to cancel the defendant's certificate of citizenship which was heretofore granted in this court on May 8, 1933, the number thereof being 3716601. The proceeding is based on section 405 of Title 8 of the United States Code, 8 U.S.C.A. § 405, which authorizes the "setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured". The case has been submitted after final hearing on the pleadings and testimony. The evidence in the case is not sufficient to show actual intentional fraud on the part of the defendant in procuring his certificate of citizenship, but the Government contends that it does show that the certificate was "illegally procured".

I find the following facts (not substantially in dispute) from the pleadings and testimony. Ciro Parisi, a native and subject of Italy, first entered the United States at the Port of New York in 1922 as a stowaway, or, as he put it, clandestinely, on the SS "Arabic". At the time of his arrival and entry he succeeded in evading examination by the Immigration Officials and paid no head tax. He went to Philadelphia, Pennsylvania, and remained there until January 1924, when he returned to Italy, where he remained until about April 1, 1924, sailing therefrom on the SS "Colombo" which arrived in New York April 10, 1924. His object in returning to Italy for a short stay was to return to the United States and

thereby effect what he was advised by the steamship agents in Philadelphia could be made a lawful entry, as he knew his prior entry in 1922 was unlawful. Immediately prior to his return to the United States on the SS "Colombo" in April 1924, he obtained from the American Vice-Consul at Naples a visa on his Italian passport, with a notation "Exception to quota-returning to domicile in United States". When the SS "Colombo" arrived in New York April 10, 1924, he exhibited his passport with this visa to the Immigration Examiner who also had before him the steamship's manifest which contained the notation that Parisi had previously been in the United States in Philadelphia from 1919 to 1924. The head tax was paid by the steamship company. On these papers he was "passed" by the Examiner with only very brief questions which did not develop the fact that his first entry into the United States had been unlawful. If the latter fact had been known to the Examiner he would not have passed Parisi for lawful entry but would have detained him for examination by a Board of Special Inquiry as the *"quota"* of immigrants from Italy *for the current year had been exhausted*. Since this admission Parisi has continuously resided in the United States at various places but since prior to April 22, 1927, in Baltimore.

On April 22, 1927, Parisi filed a declaration of intention to become a citizen stating therein under oath, among other things, that he "arrived at the Port of New York, State of New York, on or about the 7th day of April 1924". On October 21, 1931, he filed his petition for citizenship which contained the statement: "My lawful entry for permanent residence in the United States was at New York, N. Y., under the name of Ciro Parisi on April 10, 1924, on the vessel Colombo as shown by my certificate of arrival attached hereto"; also "I have resided continuously in the United States of America for the term of five years at least immediately preceding the date of this petition, to wit, since April 10, 1924, in the City of Baltimore, this State, continuously preceding the date of this petition since April 10, 1924, being a resident in said County at least six months preceding the date of this petition." He obtained and filed his certificate of arrival which recited his lawful arrival April 10, 1924. In due course thereafter this court on May 8, 1933, ordered that he be naturalized and he obtained his certificate of citizenship, there being no contest thereof by the Gov-

ernment. His unlawful entry in 1922 was not discovered by the Government until recently.

On these facts it is alleged by the Government that the defendant's certificate of citizenship "was illegally procured", even though the facts do not affirmatively show intentional fraud on his part; because the word "illegally" in the statute means "contrary to the provisions of law". The particular illegality set up is that the grant of citizenship was basically founded on the representation that there had been a lawful entry at the Port of New York on April 10, 1924, and a *(lawful) residence* within the meaning of the statute continuously thereafter in the United States, whereas in fact the entry at New York under the circumstances was not a lawful entry and could not properly be made the basis for a lawful residence thereafter within the United States. The principal question in this case, therefore, is whether this misrepresentation of fact contained in the petition for citizenship is sufficient legal ground for its cancellation even though the representation was not wilfully or intentionally false. Or, in other words, the Government contends that even if Parisi honestly believed that his entry at New York under the advice that he received, and in the absence of a more thorough examination by the Immigration Officer at the Port of entry was lawful, nevertheless, as the grant of citizenship was based on even an innocent material misrepresentation, it was "illegally procured".

The first question to be considered is whether the entry on April 10, 1924 was lawful. The defendant contends that it was. The question must be determined, of course, upon the statutory immigration law then in force, which was the Immigration Act of February 5, 1917 (39 Stat. 874, 8 U.S.C.A. § 132 et seq.), and the Quota Act of May 19, 1921, 42 Stat. 5, as amended May 11, 1922, 42 Stat. 540 (now amended by the Immigration Act of 1924, 8 U.S.C.A. § 201 et seq.).

It is not disputed that *Parisi's entry in 1922 was unlawful*. Section 3 of the Immigration Act of 1917, 8 U.S.C.A. § 136(*l*), provided that aliens coming to the United States as stowaways (with exception not here material) should be excluded from admission to the United States. The statute also provided that aliens seeking admission upon arrival should be inspected by medical officers and examined by Im-

migration Inspectors, and pay a head tax of $8.00. See 8 U.S.C.A. §§ 132, 151, 152. Parisi successfully evaded any inspection or examination and also the payment of the head tax. He knew that his entry was unlawful and his return to Italy was for the express purpose of effecting a lawful entry if he could.

When Parisi returned to the United States April 10, 1924, the Quota Act of 1921 as amended in 1922 was in force and as the quota from Italy had been exhausted for the current year, it is clear that he could not properly have been admitted unless he was rightly classified under section 2(d), 42 Stat. 5, 6, as an *"alien returning from a temporary visit abroad"*, in which event he could have been properly admitted even though the quota was exhausted, as he was apparently "otherwise admissible". The question thus is seen to be whether Parisi was in the category of an "alien returning from a temporary visit abroad". In its bare literal sense he was, but the phrase in its context has a broader significance when we look to the history of the immigration laws and the purposes of the Quota Law.[1] It was the express purpose of the latter to strictly limit the number of immigrants from foreign countries. The reason for the qualified exception of "aliens returning from a temporary visit abroad" evidently was that as they had been previously lawfully admitted to the United States they should not be prohibited from returning even though the quota from their country had been exhausted, as admitting them would not increase the number of resident aliens. And historically the particular phrase was one that had for many years been substantially used in judicial opinions relating to the immigration law to distinguish between alien immigrants coming to this country for the first time and aliens who had been permitted previously to enter the country under existing laws and had acquired a domicile here.[2] The Immigration Act of 1924 (43 Stat. 153, 8 U.S.C.A. § 201 et seq., effective July 1, 1924) defined a nonquota immigrant as—"(b) An immigrant previously lawfully admitted to the United States, who is returning from a temporary visit abroad." Sec. 4(b), 8 U.S.C.A. § 204(b). While this Act was not in force when Parisi returned in April 1924, it is in pari materia with the former immigration legislation. There seems to be no legislative history of the new Act to indicate that Congress was intentionally adding to or changing the prior law as to the status of an alien returning from a temporary visit abroad. On the contrary it seems reasonable to infer that the phrase as used in the 1921 Act had the same meaning as that expressly given in the 1924 Act. Transatlantica Italiana v. Elting, 2 Cir., 66 F.2d 542, 545.[3] It implied that the alien

---

[1] For a condensed history of the U. S. Immigration Laws, see U. S. Immigration Exclusion and Deportation, by Sidney Kansas, (1928) pp. 1–16.

[2] See article by Clement L. Bouve in Vol. 59 University of Pennsylvania Law Review. Many courts have made the distinction between aliens coming to the United States for the first time and those who had previously become domiciled here and were merely returning from a temporary visit abroad, with respect to the question as to whether they were subject on their return to various requirements of the then current immigration laws. See Rodgers v. United States, 3 Cir., 152 F. 346; United States v. Nakashima, 9 Cir., 160 F. 842, 844; Section 3 of the Immigration Act of 1917, 8 U.S.C.A. § 136(p) in providing for an exception to classes of excluded aliens reads: "Aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may pre-

scribe." See also the wording of various clauses of the first proviso to section 3 (39 Stat. 877, 8 U.S.C.A. § 136(o) referring to aliens previously "lawfully admitted."

[3] Circuit Judge Learned Hand said in that case:

"It is not clear as an original question that the phrase, 'returning from a temporary absence abroad,' implies that the alien must have acquired a domicile here, not relinquished during his absence. It is certainly possible to read the language as meaning no more than that the alien had resided here, meant to come back when he left, and did not change his mind while absent. However the departmental interpretation of the clause under the Quota Act of 1921, § 2(a), did construe it as implying domicile, and the Act of 1924 repeated the language. This was at least a reasonable interpretation of the language which we are not prepared to disavow. We hold therefore that the returning alien must have been domiciled and retained his domicile."

The departmental rule here referred

had previously been lawfully domiciled in this country which could result only from an original lawful entry under the immigration laws. Kaplan v. Tod, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585; In re Jensen, D.C., 11 F.2d 414, 415; Hurst v. Nagle, 9 Cir., 30 F.2d 346; United States v. Kreticos, 59 App.D.C. 305, 40 F.2d 1020; In re Wieg, D.C., 30 F.2d 418; United States v. Rodgers, D.C., 182 F. 274, 276, affirmed, 3 Cir., 185 F. 334, 335.[4]

 The failure of the Immigration Officer who passed Parisi to develop the fact that he was not an "alien returning from a temporary visit abroad" within the meaning of the statute, and his consequent admission for permanent residence did not make the entry a lawful one. United States ex rel. Damiano v. Archibald, D.C., 5 F.Supp. 297, affirmed, 4 Cir., 71 F.2d 1021, a case on the facts as to entry quite similar to the present; United States ex rel. Orisi v. Marshall, 3 Cir., 46 F.2d 853; United States ex rel. Spina v. Karnuth, D.C., 3 F.Supp. 774; United States ex rel. Matterazza v. Fogarty, D.C., 13 F.Supp. 403; United States ex rel. Georgas v. Day, 2 Cir., 43 F.2d 917. Nor did the endorsement of the American Vice-Consul at Naples on Parisi's passport, that his status entitled him to exception from the quota, give any validity to the entry. United States ex rel. Spinosa v. Curran, D.C., 4 F.2d 613, affirmed, 2 Cir., 4 F.2d 614. As to the circumstances under which this visa endorsement was made, the only testimony is that of Parisi himself who stated that he was asked no questions by the American Vice-Consul but merely appeared be-

fore him and had the visa endorsement stamped on his passport and paid his $10. therefor. The Department of State has officially informed the Acting Secretary of Labor under date of July 15, 1938, that under regulations and practice in the State Department in force in April 1924, the American Vice-Consul should not have so endorsed the visa except upon "a formal application under oath", in accordance with a form in which the applicant was required to state how long he had "previously resided in the United States"; and also that the applicant should have been required to state that: "I have informed myself of the provisions of section 3 of the Immigration Act of February 5, 1917 [8 U.S.C.A. § 136] and also with the provisions of the present Act to limit the immigration of aliens into the United States now in force, and I am convinced that I am eligible for admission to the United States thereunder. I realize that if I am one of the class prohibited by law from admission into the United States I will be deported or detained in the United States by Immigration Authorities, and I am prepared to assume the risk of deportation and compulsory return in case of my rejection at the American port."

The Department of State also advised that "as the American Consul General at Naples states that the file of the case of the alien above mentioned was destroyed in a fire in his office on December 9, 1936, it is not possible to furnish the original application executed by the alien." In the absence of evidence to the contrary it must be assumed, at least for the purpose of

---

to is substantially the same as Rule 9—Quota Limitations—Published under the Immigration Laws as of February 1, 1924, which read as follows (printed page 132):

"Temporary Visit Abroad"—Construed.

"Paragraph 1. A 'temporary visit abroad' as used in subdivision (d) of section 2 of said Act of May 1921, as amended shall be construed to mean an absence in any foreign country without relinquishment of domicile for a period not exceeding six months. An alien remaining abroad more than six months shall be presumed to have abandoned his domicile in the United States, and the burden shall be upon such alien to establish to the satisfaction of the appropriate immigration officer that he has not relinquished such domicile."

4 It has been held in numerous cases

under the 1924 Act that residence for long periods of time in the United States after an original unlawful entry, does not entitle the alien returning from a foreign country to admission as a nonquota immigrant, or otherwise not in accordance with the current immigration law, U. S. v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; Domenici v. Johnson, 1 Cir., 10 F.2d 433; United States ex rel. Fanutti v. Flynn, D.C., 17 F.2d 432; Ex parte Di Stephano, D.C., 25 F.2d 902; Ex parte Kaichiro Sugimoto, D.C., 33 F.2d 926, affirmed Kaichiro Sugimoto v. Nagle, 9 Cir., 38 F.2d 207; Taguchi v. Carr, 9 Cir., 62 F.2d 307; United States ex rel. Shore v. Corsi, 2 Cir., 61 F.2d 761; United States ex rel Cancelli v. Mudd, D.C.Md., No. 4858 Law, Aug. 8, 1932.[1]

1 No opinion for publication.

this case, that Parisi was not required to make the form of affidavit customarily required. But it is also clear that the visa endorsement secured by him did not of itself make his entry lawful because it was the duty of the Immigration Officer at New York to satisfy himself of the true status of the alien; and his failure to develop the facts fully is not properly an estoppel against the Government.[5]

■ The necessary conclusion of law is that Parisi never made a lawful entry into the United States before filing his application for citizenship; and it thus becomes necessary to determine what is the legal effect of his unlawful entry on his naturalization order and certificate of citizenship. This is dependent directly upon the provisions of the naturalization law rather than on the immigration laws, which we have so far been particularly considering.

■ The Federal Constitution expressly authorizes Congress "to establish an uniform Rule of Naturalization". Art. 1, § 8, cl. 4, U.S.C.A.Const. art. 1, § 8, cl. 4. There is no natural or inherent right of an alien to be naturalized and when he seeks it he must comply fully and strictly with the applicable Acts of Congress. United States v. Schwimmer, 279 U.S. 644, 647, 49 S.Ct. 448, 73 L.Ed. 889; Johannessen v. United States, 225 U.S. 227, 237, 32 S.Ct. 613, 56 L.Ed. 1066; Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738. It has long been one of the basic statutory conditions for naturalization that the alien must have "resided" within the United States for the continuous term of five years next preceding his admission. R.S. § 2170, 8 U.S.C.A. § 361. The latest general statute on naturalization is the Act of March 2, 1929, c. 536, § 6(b), 45 Stat. 1513, as amended June 25, 1936, c. 811, § 1, 49 Stat.1925; (and by Joint Resolution Ch. 819, June 29, 1938) 8 U.S.C.A. § 382. It provides that "no alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county where the petitioner resided at the time of filing his petition for at. least six months." "Residence" as here used means "domicile". United States v. Shanahan, D.C., 232 F. 169, 172; In re Barron, D.C., 26 F.2d 106; Petition of Oganesoff, D.C., 20 F.2d 978. The burden of proof is on the alien seeking naturalization to show that his status complies fully with the statutory conditions. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; Estrin v. United States, 2 Cir., 80 F.2d 105; Beale v. United States, 8 Cir., 71 F.2d 737. And *"domicile"* within the United States *cannot be properly based on an entry which is unlawful under the immigration laws.* Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; United States v. Kreticos, 59 App.D.C. 305, 40 F.2d 1020; United States v. Rodgers, D.C., 182 F. 274, 276, affirmed 3 Cir., 185 F. 334, 338; In re Scriver, D.C., 9 F.Supp. 478, 479; cf. In re Linklater, D.C., 3 F.2d 691. It necessarily follows that, as there was no lawful entry under the immigration laws, there was no "residence" thereafter in the United States within the statutory meaning.

■ The procedure for the naturalization process is now regulated largely by the Act of March 4, 1929, c. 683, 45 Stat. 1545, 8 U.S.C.A. § 372 et seq. The first act is the filing of a "declaration of intention" two years at least prior to the alien's admission in which, among other things, the alien must state "the date of arrival, the name of the vessel, if any, in which he came to the United States, and the present place of residence in the United States of said alien". 8 U.S.C.A. § 373. Section 4, of the Act of 1929, as amended, 8 U.S.C.A. § 377b provides: "no declaration of intention shall be made by any alien under this chapter, or, if made, be valid, until the lawful entry for permanent residence of such alien shall have been established, and a certificate showing the date, place, and manner of his arrival shall have been issued; except that no such certificate shall be required if the entry was on or before June 29, 1906." The requirement as to this certificate is jurisdictional in naturalization proceedings; and a decree admitting the alien to citizenship where the record does not show that the certificate has been filed is illegal in

---

[5] By the subsequent Act of May 26, 1924, the duties of the U. S. Consular Officers in the issuance of visas with respect to quota and non-quota immigrants are more particularly defined and the number of visas to be issued is limited as therein provided. 8 U.S.C.A. § 202; but by subsection (g) the visa so given does not of itself entitle the alien to admission.

the sense that it is unauthorized by and contrary to the law; and the certificate of citizenship issued thereon may be cancelled therefor. Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321. The certificate filed with the petition must show the legal entry of the petitioner into the United States, In re Demanis, D.C., 21 F.2d 876; but the recital of facts in the certificate is not conclusively correct, and may be contradicted on the naturalization hearing in court. In re Barron, D.C., 26 F.2d 106.

 It follows that if the Government had actively opposed the naturalization of Parisi and had then shown the facts now known, the naturalization order should not have been granted. Nor is there any doubt now, after recent decisions of the Supreme Court, that the certificate of citizenship based on the naturalization order may be directly attacked by the Government under the special procedure provided for in 8 U.S.C.A. § 405 taken in this case. Naturalization procedure is judicial in character and is not subject to collateral attack; but is not *res adjudicata* to the extent that it is immune from direct attack in this special proceeding authorized by Congress. Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066; United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321; United States v. Unger, D.C., 26 F.2d 114; United States v. Javier, 57 App.D.C. 303, 22 F.2d 879. The judicial proceeding is almost always ex parte without the opposition of the United States although the latter may actively intervene and oppose the grant of citizenship. 8 U.S.C.A. § 399. In this court now the proceeding is nearly always ex parte only, except to the extent that the Government is represented by an Examiner of the Immigration and Naturalization Service who, under statutory authority, has conducted preliminary hearings upon petitions for naturalization and has made findings and recommendations for the court's action thereon; and it is very exceptional that there is occasion for independent examination *de novo* of the alien by the court, see 8 U.S.C.A. § 399a.

 The final question is whether the certificate in this case should be cancelled for the misrepresentations as to the basic *statutory* conditions with respect to the lawful entry and five years residence within the United States although not made fraudulently. I reach the conclusion of law that the certificate should be cancelled for this reason. Mere minor irregularities in the naturalization process are not sufficient to warrant cancellation of the certificate, and some cases have held that facts found by the naturalization court, where the Government had intervened and opposed the naturalization, and no appeal had been taken, will not be re-examined in the direct proceedings under 8 U.S.C.A. § 405, in the absence of fraud or lack of jurisdictional requisites, United States v. Richmond, 3 Cir., 17 F.2d 28; United States v. Hirschhorn, D.C., 21 F.2d 758; United States v. Srednik, 3 Cir., 19 F.2d 71; United States v. Bischof, 2 Cir., 48 F.2d 538; United States v. Shanahan, D.C., 232 F. 169; but here there was no opposition by the Government to the naturalization order, and it has been shown that Parisi's status when admitted to citizenship lacked the basic conditions on which the naturalization order could have been granted properly. It was, therefore, "illegally procured" even in the absence of actual fraud. Maney v. United States, 278 U.S. 17, 22, 49 S.Ct. 15, 73 L.Ed. 156. In United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 425, 61 L.Ed. 853, it was said: "No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it, as provided in section 15, and demand its cancelation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these nor render their existence nonessential."

Intentionally false statements in the proceedings by the alien and also concealment of material facts at the hearing have generally been held sufficient basis for cancellation of the certificate. United States v. Etheridge, D.C., 41 F.2d 762; United States v. Marcus, D.C., 1 F.Supp. 29; United States v. De Francis, 60 App. D.C. 207, 50 F.2d 497; United States v. Albertini, D.C., 206 F. 133. But the grounds for cancellation as provided in the statute (8 U.S.C.A. § 405) include illegal procurement as well as fraud; and it has been held in many cases that certificates should be cancelled, where the alien in fact lacked one or more of the essential requirements for naturalization, even though

 

he was not guilty of fraud in procuring the certificate of citizenship; or where there is some essential defect in the naturalization procedure; for instances, where the final hearing was not held in open court, but in the judge's chambers, United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; where the certificate of arrival was not filed with the petition, United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321; Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; where the alien was ineligible for citizenship under the law by reason of racial status, or other lack of statutory qualifications, United States v. Khan, D.C., 1 F.2d 1006; United States v. Plaistow, D.C., 189 F. 1006; United States v. Ali, D.C., 7 F.2d 728; United States v. Sakharam Ganesh Pandit, D.C., 297 F. 529; Akhay Kumar Mozumdar v. United States, 9 Cir., 299 F. 240; United States v. Bhagat Singh Thind, 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616; Grahl v. United States, 7 Cir., 261 F. 487; United States v. Unger, D.C., 26 F.2d 114; and where in fact the alien *had not resided within the United States for five years previous to his naturalization.* United States v. Cantini, 3 Cir., 212 F. 925; United States v. Griminger, D.C., 236 F. 285; United States v. Simon, C.C., 170 F. 680; United States v. Mulvey, 2 Cir., 232 F. 513, 519. See, also, generally 3 C.J.S., title Aliens, §§ 148–154, pp. 858–860.

It may be suggested that the long residence of the alien in this case in the United States since his entry in 1924 and the lapse of time since the grant of the certificate tend to make this a hard case, as the alien was apparently otherwise admissible if his original entry had not been unlawful.[6] But the statute authorizing the cancellation of the certificate contains no period of limitations and the court is only authorized to apply the law to the facts of the case. As the alien has resided here for more than five years since his last entry in April 1924, (see United States ex rel. Damiano v. Archibald, D.C., 5 F. Supp. 297, affirmed, 4 Cir., 71 F.2d 1021) it is apparently conceded that he is not subject to deportation; and the cancellation of his certificate of citizenship will result only in the withdrawal of a statutory privilege to which he was not justly entitled under the circumstances. Luria v. United States, 231 U.S. 9, 24, 34 S.Ct. 10, 58 L.Ed. 101.

Counsel may submit the appropriate order in due course.

---

[6] The annual report of the Commissioner of Naturalization for the year ended June 30, 1932, p. 9, refers to aliens having this status and recommends further legislation for their naturalization under appropriate conditions. It is stated by counsel that a bill to this effect (Dies bill) was introduced in Congress and passed one House but not the other.