UNITED STATES ex rel. GEORGAS v. DAY, Commissioner of Immigration.

No. 387.

Circuit Court of Appeals, Second Circuit.

July 28, 1930.

Harold Van Riper, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Ernest Lappano, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The alien, Georgas, first came to this country on July 15, 1920, as a member of the crew of a steamer touching at Newport News. He was examined and allowed to land as a discharged seaman, but no head tax was paid for him. He says that he then meant to re-ship but could find no berth and so stayed on; that the captain had kept half his wages and said he would pay his tax. The records at Newport News show that he was allowed to land in order to reship in a vessel bound for a foreign port, and the Secretary was certainly justified in finding, as he did, that he was not otherwise admitted. He remained here till December, 1924, when he shipped as a member of the crew of another vessel, and went to Athens, where he stayed till November, 1925. There he got a proper visa from the American consul and came to Providence in December, 1925, where he was duly admitted. He lived here until the autumn of 1928, when he applied for naturalization. He was ordered deported in June, 1929, after regular hearing upon the ground that he was not a non-quota immigrant as declared in the visa when he was admitted in December, 1925. He claimed to be such because he was at that time an immigrant previously lawfully admitted to the United States, who was returning from a temporary visit abroad, section 4(b) of the Immigration Act of May 26, 1924 (8 USCA § 204(b)), and so the visa had declared. The question is whether he can qualify under that section.

In 1920 when Georgas "landed" as an alien seaman, his entry, though conditional, was lawful, for he intended "to reship on board" another "vessel bound to" a "foreign port," (section 33 of the Immigration Law of 1917, 8 USCA § 168), and such leave was given him. He had not therefore landed "contrary to the provisions" of that act within section 34 (8 USCA § 166), and verbally at any rate it did not cover him. In the face of its language we cannot see how it can be

limited to cases where the landing was lawful, as held in Hurst v. Nagle, 30 F.(2d) 346, 348 (C. C. A. 9). When he broke his leave, so to speak, by abandoning his purpose to reship, his presence became unlawful. Perhaps he was then within the meaning of section thirty-four, though not within its words; we need not decide. I held in U. S. ex rel. Gioia v. Curran (D. C.) 11 F.(2d) 904, 905, that a seaman landing "contrary to the provisions" of the act of 1917 was lawfully here, if he was admissible when he landed. This now seems to all of us wrong. The statute expressly says that he shall be deemed to be here unlawfully, though when arrested he shall not be deported if admissible. This clearly means, admissible when examined. In re Lackides (D. C.) 10 F.(2d) 980; Regulations, Rule 6, subdivision I, paragraph 1, proviso. Until examined and passed, his presence must be treated as unlawful. If he is never examined and the statute of limitations runs in his favor, a more difficult question arises as to his subsequent presence. My decision in Gioia's Case may have been right for this reason, but we need not so decide now, since the question at bar is not whether Georgas was lawfully here when he left in December, 1924, but whether he was ever "lawfully admitted."

▉ Leave to "land" in order to reship is quite another thing from being "admitted"; section thirty-three makes the distinction in terms. Such leave gives no more than a short, though indefinite, time within which the seaman must find a new berth. Admission on the other hand is an act of the authorities, accepting the alien into the body of our inhabitants, not indeed as a citizen, but as a possible resident, whose stay may be permanent unless something unforeseen happens. A seaman who breaks his leave cannot therefore be said to have been "admitted" [Domenici v. Johnson, 10 F.(2d) 433 (C. C. A. 1)], any more than one who enters contrary to the provisions of the Act of 1917 [Hurst v. Nagle, 30 F.(2d) 346 (C. C. A. 9)]. It is true that Georgas could not have been deported when he left in December, 1924; the statute had run in his favor. But again that was not an "admission," even if he was then qualified for admission as prescribed by section thirty-four. Assuming that that section applied at all to his case, and that the decision of a Board of Special Inquiry upon his arrest would constitute an "admission," no such finding was made; it was too late to make one. His status was still that of one who got in without admission, though it was too late to disturb him. It is true that practically he was in the same position for most purposes as one who had been admitted; we cannot agree for that reason that the authorities had passed him, and that appears to us the meaning of the word.

It seems indeed a galling and unnecessary discrimination merely to prevent his going on a temporary absence abroad, which others in substantially his case are allowed; his original fault merely remains a clog to hold him here. However, we can see no escape from that result; statutory provisions, so confused, contradictory, minute and manifold, as the immigration laws, inevitably produce such caprices. Still the whimsies that they create give us no power to dispense with the language; indeed, the more detailed they are, the less latitude we are given, perhaps deliberately. We can, and of course we should, weld them as far as their language admits, into a rational whole, but for more we have no warrant. We should have to say either that the original leave was an "admission," or that its breach, when cured by time, became one; the first is patently untrue, it seems to us too great a strain to say that the second is an equivalent of a decision of the authorities.

▉ Georgas, pending these proceedings, three times ineffectually applied for registration under the Act of March 2, 1929, § 1 (section 106a, title 8, U. S. C., Supp. [8 USCA § 106a]). If, however, he was "subject to deportation," he was not entitled to registration under that act. Unhappily he was so subject, as we have decided.

While the ground stated in the warrant of arrest was more proper for exclusion than for deportation, we think it was stated clearly enough. The earlier part of the warrant itself showed that he had landed over three years earlier, and of course exclusion was not its object. It would introduce needless difficulties into the procedure to cut so fine, when the alien is advised of the substance of the charges against him.

We cannot see that the burden of proof cuts any figure in the case. The alien himself said that he entered to reship; under such circumstances no head tax would be paid. True, he also said that the captain told him he would pay the tax, but he did not assert that this had been done, and in this regard his story is in any case contradictory, because no head tax was due. The absence of any record of payment falls in with this proof. The Secretary certainly was justified

in concluding that no tax was paid, even if the burden of proof was on the authorities.

Order affirmed.