**Ex parte FILLIBERTIE et al. and nine other cases.**

Nos. 327, 360, 351, 366, 352, 359, 361, 363, 365, 355.

District Court, E. D. South Carolina, Aiken Division.

Sept. 5, 1945.

No attorneys of record.

TIMMERMAN, District Judge.

The petitions for naturalization on behalf of the above-named petitioners were considered and naturalization refused on August 22, 1945. This opinion is now being filed to show the reasons for the action then taken.

The facts upon which the Court acted, briefly stated as to each petitioner are as follows:

Marino Fillibertie, No. 327: This petitioner, along with a group of one hundred other Italian subjects, entered the United States on or about April 25, 1940. They were admitted as representatives of the Italian government at the World's Fair in New York for the duration of the Fair, and thirty days thereafter, pursuant, as it is said, to the provisions of Section 203 (Classification 2), 8 U.S.C.A., and the last proviso attached to and constituting a part of Section 136(h), 8 U.S.C.A. The petitioner overstayed his time and was taken into custody under a departmental warrant of arrest on January 23, 1941. He was granted a deportation hearing and ordered deported on the ground that he had remained in the United States beyond the permissible period. Before deportation was accomplished the petitioner was interned until November 27, 1941, and then released on bond. He was inducted into the United States Army on February 10, 1945, but between that time and the time of his release on bond he filed an application for relief from the deportation order and sought permission to depart the United States voluntarily under the provisions of Section 155(c), 8 U.S.C.A., as Amended by Act of June 28, 1940. In consequence of this request the deportation hearing was reopened but no final decision on the request has ever been made so far as the Court is advised. The petitioner in his testimony before the Court stated that while he entered the United States on a temporary basis, he really never intended to leave when his time was up. His conduct lends color to that statement.

Ku Sun Ling, No. 360: The petitioner was born in China, and is a Chinese citizen. He entered the United States on September 2, 1939, as a student. He stated that it was his intention to return to China when he entered, but that he afterwards changed his mind and decided to live in the United States if he could. He was inducted into the United States Marine Corps on May 22, 1945. He entered the United States on a non-quota immigration visa to attend Purdue University as a student. His permissive stay in the United States ended August 31, 1941. The permit was granted pursuant to the provisions of Section 204 (e), 8 U.S.C.A. Later his permissive stay in the United States was extended until September 20, 1945, and thereby his status was changed to that specified in Section 203 (Classification 2), 8 U.S.C.A.

Bo-Erling Jonsson, No. 351: The petitioner is a native of Sweden and was a citizen of that country when he entered the United States on May 19, 1941, as a member of the crew on the M/V Kungholm, a ship of foreign registry. Before arrival in the United States he applied to the American Consul at Colon, Panama, for a visa for permanent residence in the United States, but did not receive it due, as he says, to lack of time. He further states that while he was admitted as a seaman it was his intention to remain in the United States as a resident, but that he withheld knowledge of that intention from the examining inspector. He was arrested by the Immigration and Naturalization Service in 1942 under deportation proceedings and was released on a bond of $500. He was admitted as a seaman under Section 203 (Classification 5), 8 U.S.C.A., for the duration of his vessel's stay in port. He was inducted into the United States Army on June 11, 1945, and thereafter made application for citizenship.

Robert Woodleigh Westaway, No. 366: The petitioner is a native of Canada and a citizen of that country. There is no record of his admission to the United States. The petitioner says he has lived in the United States practically all of his life, coming here as a child, and that he thought he had been legally admitted for permanent residence. He was inducted into the United States Army on March 7, 1945. The records of the Immigration and Naturalization Service show that he was admitted to the United States through Niagara Falls, N. Y., as a United States soldier and citizen of Canada, born in Prince Edward Island, Canada, May 17, 1923, and destined for Camp Gordon, Georgia, to rejoin his army unit for an indefinite stay. Presumptively his category is established by Section 203 (Classification 2), 8 U.S.C.A. This petitioner was given a furlough from the army so that he might go to Canada and re-enter the United States as aforesaid so that such entry into the United States could be used as a basis for naturalization. The petitioner takes the position that notwithstanding his return to Canada and re-entry into the United States as a Canadian citizen he all the time intended to reside permanently in the United States, and that his sole purpose in going to Canada and

re-entering the United States was to try to establish a legal basis for his naturalization.

John Francis Hoare, No. 352: This petitioner is a citizen of Eire. He came to the United States as a member of the S. S. Vicia and he was allowed to enter the United States as a seaman in Tampa, Florida, on March 30, 1941. He states that when he entered the United States he fully intended to leave when his ship sailed, but changed his mind after he gained admittance, which was as a seaman pursuant to Section 203 (Classification 5), 8 U.S.C.A. In August 1942 he was arrested on a warrant of the Immigration and Naturalization Service charging him with a violation of the Immigration laws in overstaying the time he was allowed to be in this country legally. After a hearing on November 17, 1942, he was ordered deported. Later on April 6, 1945, due to the fact that the petitioner was the subject of a neutral country, the deportation order was withdrawn and a direction was made that he be permitted to depart voluntarily. He was inducted in the United States Army on June 13, 1945.

Lee Shu, No. 359: This petitioner was born in France but his nationality is Chinese. He was admitted into the United States in August, 1938, as a student. He states that he had no intention of remaining in the United States when he entered but that he subsequently decided to remain and live here. He was a student at Purdue University. After his entry he was granted an extension so that he might stay in the United States as a student until April 27, 1947. He was inducted into the United States Marine Corps June 11, 1945.

Wong Lip King, No. 361: The petitioner is a native of Shanghai, China, and his nationality is Chinese. He entered the United States in September, 1936, as a student to attend the University of Illinois. After his entry his time to remain here as a student was extended to September 22, 1945. He was inducted into the United States Marine Corps on June 15, 1945. He stated at the hearing that when he entered the United States he fully intended to return to his native land when he finished his studies but that he later decided to live permanently here.

Hsing Min Uy, No. 363: The petitioner is a native of Peiping, China, and a citizen of China. He was admitted to the United States on September 16, 1939, for the purpose of attending Purdue University as a student. He, like other Chinese nationals mentioned herein, had a non-quota immigration visa for two years, Section 204(e), 8 U.S.C.A. Later his status was changed from that of student to temporary visitor for business, under Section 203 (Classification 2), 8 U.S.C.A., and his permissible stay in this country under that status terminated August 11, 1945. He says that he entered the United States fully intending to return to China, but that he afterwards decided that he wished to remain here permanently. He was inducted into the United States Marine Corps on April 23, 1945.

Kee Sing Yee, No. 365: The petitioner was born at Shanghai, China, and is a citizen of China. He came to the United States as a member of the crew of the S. S. Tamaha. He entered the United States as a seaman and, while his ship was in port, he jumped his ship and remained in the United States. He was reported by the Master of his ship as a deserter on August 14, 1943. He was inducted into the United States Army on February 14, 1945.

Aron Smucler alias Albert Smucler, No. 355: The petitioner was born in Chisinau, Bessarabia, Rumania, and is a Rumanian citizen. He entered the United States as a seaman in August, 1940. The Immigration and Naturalization Service ordered the detention and deportation of the petitioner on August 5, 1940. Ten days later he was reported as a deserter by the Master of his ship. He was inducted into the United States Army on November 7, 1942. The Army gave him a furlough and he went to Canada and re-entered the United States on May 14, 1945, as a United States soldier, a Rumanian citizen, destined for Fort Jackson, S. C. Petitioner's visit to Canada and re-entry were to aid him in securing naturalization.

None of the petitioners have seen military or naval service beyond the continental limits of the United States.

From the foregoing it is seen that four of the petitioners entered the United States as alien students for stated periods and that their permissible stays were extended on the ground that they were alien visitors or on the ground that they were aliens temporarily here for allowable reasons of business or pleasure, 8 U.S.C.A. § 203(2). Four of the petitioners entered as seamen, jumped their ships and illegally remained

in the United States. One came as the representative of a foreign government and was allowed to stay here during the World's Fair and for thirty days thereafter; and the other, a native of Canada, was unable to show lawful admission to this country. Deportation proceedings were commenced in the cases of several of the petitioners and some were ordered deported and another or others were allowed to depart voluntarily. In what capacities the petitioners who were originally admitted as students were allowed to remain in the United States is not made clear, but that makes little difference for the purposes of this opinion.

The pertinent provisions of Section 701 of the Nationality Act of 1940, 8 U.S.C.A. § 1001, as amended by the Act of December 22, 1944, 58 Stat., Part I, pp. 886, 887, reads as follows: "Notwithstanding the provisions of sections 303 and 326 of this Act, any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who shall have been at the time of his enlistment or induction a resident thereof and who (a) was lawfully admitted into the United States, including its Territories and possessions, or (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, being unable to establish lawful admission into the United States serves honorably in such forces beyond the continental limits of the United States or has so served, may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention, no certificate of arrival for those described in group (b) hereof, and no period of residence within the United States or any State shall be required; * * *."

It thus appears that in order for a noncitizen to be naturalized several conditions must be made to appear, to-wit: (1) that he has served honorably in the military or naval forces of the United States during the present war; (2) that he shall have been at the time of his enlistment or induction into the military or naval forces of the United States a resident thereof; (3) he must have been lawfully admitted into the United States or one of its Territories or possessions. There is an exception as to lawful admission for those who entered the United States prior to September 1, 1943. If they are unable to establish lawful admission, but can show honorable service in some branch of the armed forces of the United States beyond the continental limits thereof, they may nevertheless be naturalized if the other conditions are met; but none of the petitioners fall in this class or group. If the petitioners meet the foregoing requirements, they need not show the filing of a declaration of intention.

It may be accepted as a fact that all of the petitioners have served honorably in some branch of the armed forces of this country during the present war, within but not without the continental limits of the United States; but it cannot be accepted as a fact, under the showings made, that any of the petitioners were lawful residents of the United States at the time of the filing of their petitions for naturalization. No hard and fast rule can be laid down as a guide for the interpretation of such words as "resident", "domicile", etc., but surely Congress in passing the Nationality Acts did not have in mind both legal and illegal residence in the United States. Many of the petitioners were not lawfully admitted into the United States. They gained entrance illegally. Another gained legal entrance but overstayed his time, thereby making his presence here illegal and himself subject to deportation. There are but four petitioners who were legally here at the time of filing their petitions for naturalization, and they were first admitted as immigrant students, and later temporarily as tourists or for reasons of business or pleasure, all of which conditions negative the idea of legal residence.

Congress undoubtedly intended that those applying for naturalization, especially those who had not served honorably in the armed forces of this country without the continental limits of the United States, should be able to establish legal residence as is evidenced by the supporting phrase, "who * * * was lawfully admitted into the United States."

It is the right of Congress—not the right of the Courts—to say what noncitizens of the United States may become citizens thereof. Const. Art. I, Secs. 1 and 8. So when Congress prescribes the requirements for naturalization, it is beyond the power of any court or the authority of any administrative agency to extend or to constrict the requirements so established.

The important words of the Act here brought into question are "resident thereof" and "lawfully admitted into the United States". The latter phrase complements the first. It emphasizes that Congress intended a residence founded on lawful entry. Since an unlawful entry gives rise to the right, if not the duty of the government to expel such an entrant, Sec. 154, 8 U.S.C.A., it is hardly conceivable that Congress intended that legal residence could be predicated on either an illegal entry or an illegal stay in the United States. As said by Mr. Justice Field, in United States v. Kirby, 74 U.S. 482, 483, 486, 19 L.Ed. 278, "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to * * * an absurd consequence." It would be imputing to Congress absurd and contradictory purposes to hold that it intended to guard against the illegal entry of aliens into this country and at the same time to encourage such illegal conduct by allowing it as a condition of legal residence or as a requisite for naturalization.

■ It has been suggested that the phrase "lawful entry for permanent residence" appearing in Section 329(b) and other sections of the Nationality Act, 8 U.S.C.A. § 729(b) et seq., should be distinguished from the word "residence" used in the section here under consideration; that "A change of phraseology creates a presumption of a change in intent." It is not plain what distinction, if any, Congress intended by using the words "permanent residence" in one place and the single word "resident" in another, but to accept the suggestion made would amount to striking from the amendment of 1944 the word "resident". It is not to be presumed that Congress used the word "resident" in the sense of "visitor" or "trespasser", for surely they are not synonymic.

It was also suggested that "Comparison with other legislation relating to the naturalization of persons in the armed forces lends support to the fact that a liberal interpretation of the requirements for lawful entry was intended" by Congress. This amounts to no more than a request to strike from the Act the words "who was lawfully admitted" and to insert in lieu thereof the words "who gained entry by whatever means."

It was further suggested that "Although the certificate of arrival requirement *is waived only for persons who have served beyond the continental limits of the United States,* the history and purpose of the Act indicate an intention on the part of Congress not to require lawful admission for *permanent residence* in the type of naturalization proceedings under discussion." (Emphasis added.) That is only another way of saying that Congress while prescribing specific requirements for naturalization expected that the Courts and the Naturalization Service would disregard them. The Court cannot lend itself to such an interpretation of the congressional intent.

Another suggestion is that under the Act of 1944 "the privilege of naturalization is extended to those not racially eligible to naturalization under the general provisions of the law. However, a person racially ineligible to citizenship is barred under the immigration laws from entering the United States for permanent residence (Section 13(c), Immigration Act of 1924)." Here we have a play on the word "permanent". If the applicant was a resident of the United States "at the time of his enlistment or induction" and if he "was lawfully admitted into the United States", he meets the requirements of the Act, regardless of his race. When Congress lifted the ban against those who because of race previously had been excluded from consideration for naturalization, effective the date of the Act, that did not vest in the Courts power to make the Act retroactive so as to cover previous illegality with a cloak of legality. Congress might have done so, but it didn't.

Lastly it has been suggested that the Immigration and Naturalization Service has promulgated certain regulations which in effect construe the Act to mean that lawful admission into the United States is not a requisite for naturalization, notwithstanding the plain language of the Act to the contrary; that after the publication of such interpretation "Congress amended the Act by waiving the certificate of arrival requirement for certain persons serving honorably in the military and naval forces beyond the continental limits of the United States", although "the phrase 'lawfully admitted' applying to those not exempted from the certificate of arrival requirement remained unchanged." The implication of this suggestion is that Congress by silence approved an utterly illogical and contradictory administrative construction of the Act. A copy of the referred to regulation

is not before the Court. Hence no opinion can be expressed as to its meaning, but if it goes as far as the suggestion indicates, then it is a palpable effort on the part of an administrative agency to usurp the legislative powers of Congress.

For the reasons stated naturalization was denied to the named petitioners; and an order to that effect was entered as of August 22, 1945.