**Petition of BOZIN.**

**No. 246/P/4079.**

District Court, S. D. California, Central Division.

Feb. 20, 1947.

Benjamin W. Henderson, of Los Angeles, Cal., for petitioner.

Frank J. Burns, U. S. Naturalization Examiner Immigration and Naturalization Service, of Los Angeles, Cal., for the Government.

MATHES, District Judge:

Josip Bozin has filed his petition to be naturalized as a citizen of the United States pursuant to § 701 of the Nationality Act of 1940, 8 U.S.C.A. § 1001. The petition rests upon the claim that petitioner is an alien who has served honorably in the naval forces of the United States and at the time of his induction was a lawfully admitted resident of the United States.

The facts are undisputed. Petitioner was born in Yugoslavia in 1908 of Yugoslavian parents. He was first granted admission to this country on July 26, 1940, at Pensacola, Florida, while serving as a seaman aboard the S.S. "Vid." He did not, however, go ashore at Pensacola.

The "Vid" later sailed from Pensacola to Houston, Texas, where, a few days after the ship put into port, petitioner signed off the crew list and was regularly admitted to this country as an alien seaman for a stay of sixty days. It is stipulated that the record and all proceedings surrounding petitioner's admission as an alien seaman for a temporary stay are in all respects regular.

From Houston petitioner traveled by train to San Pedro, California, where some of his relatives were living. He did not "ship out" within the sixty-day period,

but remained and took up the occupation of fishing out of San Pedro.

Thereafter petitioner registered both as an alien and for the draft. On November 30, 1944, he was inducted into the United States Navy and was honorably discharged on February 27, 1945. Petitioner's service in the Navy was entirely within "the continental limits of the United States."

Section 701 of the Nationality Act of 1940 provides that: "Notwithstanding the provisions of sections 303 and 326 of this act [8 U.S.C.A. §§ 703 and 726], any person not a citizen, regardless of age, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and Who shall have been at the time of his enlistment or induction a resident thereof and who (a) *was lawfully admitted into the United States,* including its Territories and possessions, or (b) having entered the United States, including its Territories and possessions, prior to September 1, 1943, being *unable to establish lawful admission* into the United States serves honorably in such forces beyond the continental limits of the United States or has so served may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention, no certificate of arrival for those described in group (b) hereof, and no period of residence within the United States or any State shall be required * * *." 8 U.S.C.A. § 1001. (Emphasis added.)

The Commissioner of Immigration and Naturalization has construed "lawfully admitted," as used in § 701(a), to include persons admitted as students, visitors or seamen. Petition of Weber, D.C.E.D.N.Y. 1945, 61 F.Supp. 683, citing Monthly Review, Immigration and Naturalization Service, September, 1943, Vol. 1, p. 7.

The brief on behalf of the Commissioner sets forth the following administrative interpretation of § 701(a): "Under the construction placed upon this section by the Immigration and Naturalization Service, there is no requirement that a petitioner's admission shall have been for permanent residence. The view has been taken that Congress was aware of the fact that persons admitted for limited periods, who became technically subject to deportation by overstaying the period of their admission, would seek the benefits of the section. The Service has, accordingly, issued certificates of arrival in cases in which entry was as a seaman under Section 3(5) of the Immigration Act of May 26, 1924 [8 U.S.C.A. § 203(5)], and, where the individual was subsequently ordered deported on the charge that he had remained longer in the United States than the time for which he was admitted, has nonetheless recommended the granting of his petition."

The Commissioner's opposition to the petition here is predicated upon certain provisions of the Immigration Act of 1924. 8 U.S.C.A. § 201 et seq. Section 13 of that Act provides that no immigrant shall be admitted to the United States unless he has an unexpired immigration visa. 8 U.S.C.A. § 213. The term "immigrant" is defined in § 3 of the Act as "any alien departing from any place outside of the United States destined for the United States, except * * * (5) a bona fide alien seaman serving as such on a vessel arriving at a port of the United States and seeking to enter temporarily the United States solely in the pursuit of his calling as a seaman * * *." 8 U.S.C.A. § 203.

It is conceded that petitioner was a "bona fide alien seaman." The Commissioner, however, contends that because petitioner came ashore with an alleged undisclosed intention to remain permanently, he was an immigrant and not a member of any of the excepted classes specified in § 3 of the 1924 Act. As an immigrant, the argument continues, petitioner could not have been "lawfully admitted" since he had no immigration visa.

If found that petitioner's intention to remain first entered his mind even so much as an instant after he left ship and came ashore at Houston, the Commissioner does not further contest the petition. Thus it is urged that the question of whether petitioner is entitled to the benefits of § 701 turns upon his unexpressed, unmanifested, purely subjective intent at the moment of entry.

The Commissioner is unable to point to any indicia of Congressional will that the

important right of an alien ex-serviceman to seek American citizenship be made to rest upon this nebulous test. Considerations of reason and policy argue that determination of the lawfulness of an alien's admission ought to be based upon criteria more readily and certainly ascertainable than the undisclosed intent of the alien himself at the moment of entry.

The ambition and dream of many people in foreign lands that some day they may be American citizens is a matter of common knowledge of which the courts will take judicial notice. "For it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men." Schneiderman v. United States, 1942, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796.

In these circumstances it seems not improbable that most aliens who overstayed the period of their admission and served in the armed forces of this country entered with the undisclosed hope and intent that somehow they might contrive to remain and become citizens. If entry with such a state of mind were held to constitute an unlawful admission, few aliens not called to serve "beyond the continental limits of the United States" could qualify for the benefits conferred by § 701.

Section 3(a) of the Selective Training and Service Act provides that citizens or subjects of a neutral country residing in the United States may make application, prior to induction, to be relieved from liability for training and service; but that those who do so are thereby debarred from becoming citizens of the United States. 50 U.S.C.A.Appendix, § 303(a).

In enacting § 701, it was the plain intent of Congress to offer aliens special inducement to serve in the armed forces of this country, by permitting those serving honorably within the continental limits of the United States to be naturalized without prior residence or declaration of intention, provided only they establish lawful admission into the United States; and by extending to those serving honorably "beyond the continental limits of the United States" the same privilege, without the necessity of establishing lawful admission into the United States.

An alien's admission is unlawful if gained without actual permission, or if permission be procured by means of actual fraud. There is no suggestion of any such irregularity surrounding petitioner's entry. No declaration of intent was required as a condition precedent to his admission. Josip Bozin entered this country "standing up," in his own name, without misrepresentation, and with the express permission of the proper authorities.

Having been admitted pursuant to the laws of this country, petitioner's admission was "lawful." Having thereafter served honorably in the naval forces of the United States, although not "beyond the continental limits of the United States," petitioner earned the right to seek naturalization as a citizen pursuant to § 701(a).

This conclusion is reached after full consideration of Ex parte Fillibertie, D.C.E.D. S.C.1945, 62 F.Supp. 744, 745, where the court denied nine petitions for naturalization, holding that aliens who "served honorably in the military or naval forces of the United States during the present war," but not "beyond the continental limits of the United States," could not qualify for the benefits of § 701, if such aliens had overstayed the non-immigration visas under which they were admitted to this country. Some of the petitioners confessedly had the intention to remain in this country when they were admitted, but the court held that those who had no such intention were in the same position as the others.

Judge Timmerman there construed the requirement of "lawful admission" as complementing that of residence, and concluded that lawful residence is required of an alien seeking naturalization under § 701(a). Such a construction, in my opinion, unduly limits the scope of § 701. Cf. Ex parte Sturm, D.C.N.Y.1929, 38 F.2d 272. It wholly rejects the Commissioner's administrative interpretation that aliens who become technically subject to deportation, by overstaying the period of their admis-

sion, can qualify for the benefits of § 701 (a).

For the reasons stated, I find that the petitioner at bar was lawfully admitted into the United States, and is entitled to the benefits of § 701(a) of the Nationality Act of 1940. The petition of Josip Bozin is granted.