## In re VIOLET AURORA SIMMIOLKJIER, et al.

## Nos. 221-226 (St. Croix)

## Nos. 252-258 (St. Thomas)

## District Court of the Virgin Islands

Divs. of St. Croix, and of St. Thomas and St. John

## May 20, 1947

*See, also, 71 F. Supp. 553*

CROXTON WILLIAMS, Asst. U. S. Attorney, St. Thomas, Virgin Islands, *for the Government*

CYRIL MICHAEL, St. Thomas, Virgin Islands, *amicus curiae*

MOORE, *Judge*

As these four cases involve the same question they will be considered and disposed of together. Two of them came up before this court in the Division of St. Croix and two in the Division of St. Thomas and St. John.

The petitioners filed their petitions for naturalization under sections 310(b) and 311 of the Nationality Act of 1940 (8 U.S.C. §§ 710(b), 711)█, which requires three years residence in the cases of Violet Aurora Simmiolkjier, and Raphael Hyppolyte Aubain and two years residence in

the cases of Cynthia Vanita Phillipus and Constancia El-
mira Hatchett prior to the filing thereof. The certificate
of arrival filed with the petitions are based upon the re-
entry of the petitioners. Objection to the granting of the
said petitions is filed by the Immigration Service.

The petitioners arrived in the Virgin Islands of the
United States at different dates, all preceding July 1, 1938,
but there is no record of their arrival.

The reason that this date is important in these cases
is because on December 16, 1943, the Commissioner of
Immigration, under the authority conferred upon him by
statute, promulgated a regulation, the pertinent parts of
which provide as follows:

". . . Aliens who entered the Virgin Islands of the
United States prior to July 1, 1938, shall, for purposes
of reentry at any port of entry, be presumed to have
been lawfully admitted for permanent residence even
though no record of their admission as non-immigrants
is found. Any alien within the terms to this section shall
upon application for readmission to the United States
be inspected and be subject to the requirements of the
immigration laws and regulations the same as if the
original presumed lawful entry was by recorded admis-
sion for permanent residence; and if no record exists of
a reentry since such presumed lawful entry, the alien
shall be regularly manifested for the purpose of record-
ing the application for readmission. Nothing in this sec-
tion shall be deemed to preclude an alien qualified to do
so from applying for registry[1] under section 328(b) of

[1]"The Nationality Act of October 14, 1940 [8 U.S.C. § 501 et seq.], and other
preceding Acts have permitted an alien arriving in the United States
prior to July 1, 1924, in whose case there is no record of admission for
permanent residence, to apply for registry without having to depart,
upon compliance with certain regulations, and therefore is eligible for
naturalization by virtue of the certificate of arrival issued nunc pro
tunc pursuant to the statutory provisions. However, the applicants here-
in are not eligible for such registration under the Nationality Act of
October 14, 1940, having arrived in the United States subsequent to
July 1, 1924."

99

the Act of October 14, 1940 (54 Stat. 1152, 8 U.S.C. 728 [now covered by 8 U.S.C. §§ 1230, 1259])."

To fully understand the purpose behind the promulgation of the above regulation of December 16, 1943, it is necessary to give a brief history of immigration in the Virgin Islands of the United States, for the Islands have consistently posed immigration problems to the authorities since they were purchased by the United States from Denmark in 1917.

During the Danish administration of the Islands there were no restrictions on intercourse with the neighboring British, French and Dutch islands. Naturally, people entered and departed frequently. For several years after the transfer practically the same condition continued, because there was no effective enforcement of the United States immigration laws, as the said laws, especially the Act of March 3, 1917█, were considered inapplicable to the Islands.

Not until June 1, 1925, were any immigration laws considered applicable to the Virgin Islands, at which time the Naval Governor proclaimed that the Act of 1924 (8 U.S.C. § 201 et seq.)█, was applicable. But in spite of this there was no real enforcement thereof, for the local administration in charge of enforcing the same, due to the lack of experienced and sufficient personnel, could not handle the situation efficiently. It was easy therefore, for aliens to slip in, either through a regular port of entry or "through the window," as it is called. With the attempted enforcement of the Immigration Act of 1924 most of the aliens who were residing here stayed and those who were temporarily out returned from time to time and stayed.

It was during this chaotic state of affairs the Solicitor of the Department of Labor on March 31, 1938, ruled that both the Acts of 1917 and 1924 were applicable to the Virgin Islands and were enforceable by the Immigration and Naturalization Service.

Under this ruling the Immigration and Naturalization Service on July 1, 1938, assumed responsibility for the enforcement of immigration laws and the Governor of the Virgin Islands was appointed as an acting district director and he in turn made use of the police force and employed other persons for the purpose of enforcing the immigration laws. As theretofore, due to inexperience of the persons working in this field, it did not meet with the success anticipated and on March 1, 1941, the Immigration and Naturalization Service took over completely.

Shortly after this, with the development of the submarine, army and air bases, hundreds of aliens from the neighboring islands came in, most of them illegally, to work. Because of the insufficiency of local labor they were permitted to stay as long as they were working on defense projects. The greatest difficulty arose when these laborers were laid off, as they disliked the idea of having to return to their homeland where there were little or no opportunities for work and they had become accustomed to receiving almost unbelievable wages. Weeding these aliens out was a gigantic task for the Immigration and Naturalization Service.

This, then, was the background which in part gave rise to the promulgation of the regulation regarding aliens residing in the Virgin Islands prior to July 1, 1938. This regulation was to enable aliens who entered after July 1, 1924, the effective date of the Immigration Act of 1924, and who could not establish legal entry, although having lived and established a residence, from being deportable,

and to make it possible for them to re-enter if they left the Islands on a trip, since a strict interpretation of the 1924 Act would make them deportable if here, and there were no record of their arrival subsequent to July 1, 1924, and excludable, if outside seeking readmission.

The question might be asked, why was July 1, 1938, fixed as the date prior to which lawful entry would be presumed as for permanent residence for re-entry purposes, even though no record of arrival may be found?

The answer is, that was the date the Immigration and Naturalization Service became responsible for immigration matters and, hence, by the said regulation all aliens who entered prior to that date, whether manifested or not, were given the benefit, for re-entry purposes, of the lax enforcement or nonenforcement of the immigration laws which should have been enforced in the Islands in the same manner as all over the United States.

The question is, does this presumed lawful entry of an alien for permanent residence count for naturalization purpose, even though there is no record of his arrival? It is the contention of the petitioners herein that they have resided continuously in the United States since their arrivals, all of which have been prior to July 1, 1938 (but after July 1, 1924), and are therefore eligible for naturalization by reason of such residence.

It will be noted from the regulation that the presumed lawful admission for permanent residence of the alien prior to July 1, 1938, is "for the purpose of reentry." It will also be noted that the same regulation provides that if no record exists of the alien's presumed lawful entry, if he departed and returned, he should be regularly manifested for the purpose of recording the application for readmission.

The Nationality Act of 1940, which codifies the sev-

eral prior nationality laws, requires, among other things, that the petitioner for naturalization must have resided in the United States for a certain number of years prior to the filing of petition for naturalization. This period varies according to the marital status of the petitioner.

The Nationality Act of 1940 also provides that at the time of filing the petition there shall be filed a certificate from the Immigration and Naturalization Service (certificate of arrival) if the petitioner arrived in the United States after June 29, 1906, stating the date, place, and manner of petitioner's arrival in the United States.

■ Since a certificate of arrival is necessary to accompany a valid petition for naturalization, may the Immigration and Naturalization Service issue such a certificate based on the presumed entry of the petitioner?

The question is definitely answered in the negative by the specific provision of another regulation (8 C.F.R. 363.7) which limits the regulation previously quoted, in the following terms:

"No certificate of arrival shall be issued in behalf of an alien on the basis of an original entry which under the provision of s 110.38 of this chapter is presumed for reentry purposes to have been a lawful admission for permanent residence. A certificate of arrival will be issued on the basis of the reentry of such an alien where there is a manifest record showing that the entry was by lawful admission for permanent residence."

On the basis of the reentry of the petitioners as provided in this latter regulation, they were issued certificates of arrival, which were filed with their petitions and which show the arrival of Violet Aurora Simmiolkjier to be February 10, 1945; of Raphael Hippolyte Aubain to be June 14, 1945; of Cynthia Vanita Phillipus to be April 23, 1945; of Constancia Elmira Hatchett to be August 14, 1944.

The residence of the petitioners at the time of filing their petitions as shown on the certificates of arrival was less than the time required by statute in each case.

Inasmuch as the Nationality Act of 1940 provides that a petitioner must have resided in the United States for a certain period before filing petition, and with the petition a certificate of arrival showing date of arrival must also be filed, and it is clear from the regulation (8 C.F.R. 363.7) that a certificate of arrival could not be based on the presumed entry, the only question involved is:

(1) In the promulgation of the said regulation by the Commissioner, was the delimiting of the presumed lawful entry for permanent residence to "purposes of re-entry" an abuse of any discretion he might have under the immigration laws?

To determine that question we have to ascertain: (1) whether the "presumed residence" is residence within the meaning of the naturalization laws; and (2) what are the powers of the Commissioner.

In the absence of a definition in the Nationality Act of 1940 itself and in the previous nationality laws for the term "residence," we have to look to the meaning the courts have placed upon it.

█ The term "residence" used in nationality acts is legal residence, and anyone who enters illegally cannot thereby acquire legal residence as a basis for application for citizenship. United States v. Goldstein, D.C., 30 F. Supp. 771; In re Scriver, D.C., 9 F. Supp. 478; Zartarian v. Billings, 204 U.S. 170, 27 S. Ct. 182, 51 L. Ed. 428; United States v. Parisi, D.C., 24 F. Supp. 414.

█ For naturalization purposes before an alien can reside in the United States his legal admission for permanent residence must be established. Subhi Mustafa Sadi v. United States, 2 Cir., 48 F.2d 1040.

■ An alien has not "arrived" in the United States until he has passed required examination to determine whether he is in the excludable classes, arrival not being effective until entry is made in compliance with legal requirements and legal residence begins. The starting point is the entry, evidence of which is registry and certificate. In re Kempson et al., D.C., 14 F.2d 668.

■ While it is not claimed the petitioners entered illegally, yet for naturalization purposes they cannot establish they were legally admitted at the time of their alleged entry, and the burden is upon them to prove their lawful entry. In re Olsen, D.C., 18 F.2d. 425.

In a somewhat analogous case, the alien arrived in the United States on March 4, 1919. He reported for inspection and paid the head tax February 5, 1926, at which time he was given a certificate of arrival as of March 4, 1919, the alleged date of his entry. The court held that was erroneous; that he should have been registered and a certificate issued as of the date of his examination, February 5, 1926; that his legal residence did not commence until from that time. His petition was denied on that ground. In re Kempson et al., D.C., 14 F.2d 668.

■ It is clear from the above that the presumed lawful entry and residence under the regulation is not the kind of entry contemplated in the Nationality Act of 1940, which, as has been stated before, is but a codification of other nationality acts.

■ ■ It is also clear that the Commissioner did not abuse his discretion in placing a limitation on the presumed residence of the petitioners herein which was prior to July 1, 1938; for his authority under the Nationality Act of 1940 in the matter of regulations is but to make such rules and regulations as may be necessary to carry into effect the provisions of the said Act. Nationality Act of 1940, sec. 327 (54 Stat. 1151; 8 U.S.C. § 727)■. The Com-

missioner by rules or regulations cannot make nugatory any provision of the basic law under which he derives his powers. He has no power of discretion whereby he can abrogate any of the requirements of the law. In re Kempson, supra.

Under the power vested in him the Commissioner went as far as he could legally go when he promulgated the regulation, relieving a situation which existed and which could have worked hardship on the petitioners and others in the same status, as without that regulation they were deportable.

█ As it is seen, the Nationality Act requires residence after inspection and lawful entry and no other residence will count. There are exceptions, but they are by specific provisions of the said Nationality Act, such as in the case of persons arriving in the United States prior to July 1, 1924, for whom registration of their arrival is provided; and of persons serving on certain vessels, whose service is accepted as residence, even though their entry was subsequent to said service. The petitioners do not come within any of these exceptions.

From all of the above it must be concluded that the petitioners herein, not being able to prove legal entry prior to July 1, 1938, and that at the time of filing their petitions for naturalization they had not resided in the United States for the required period, as shown by the certificates filed with the petitions, they have not established their right under the Nationality Act of 1940 to naturalization and, accordingly, their petitions are denied.