**UNITED STATES**
**v.**
**ANASTASIO.**
**Civ. No. 1189–52.**

United States District Court
D. New Jersey.
April 14, 1954.

William F. Tompkins, U. S. Atty., Newark, N. J., Edward V. Ryan, Asst. U. S. Atty., Jersey City, N. J., Louis Steinberg, N. Y. Dist., Immigration & Naturalization Serv., New York City, for plaintiff.

Samuel Paige, New York City, for defendant.

SMITH, District Judge.

This is an action to cancel and set aside a certificate of naturalization on the grounds that the same was fraudulently and illegally procured. The jurisdiction of the Court is derived from Section 338(a) of the Nationality Act of 1940, 54 Stat. 1158, 8 U.S.C. § 738 (a).* The statutory jurisdiction of the Court is not challenged.

Facts

I.   The defendant, formerly a national and subject of the Kingdom of Italy, had been employed as an "aspiring seaman" on the S.S. Sardegna, a vessel of foreign registry, which arrived at the port of New York on September 12, 1917; the vessel had sailed from the port of Genoa, Italy, on August 23 of the same year. The defendant deserted his ship and, in violation of Section 32 of the Act of 1917,[a] landed in the United States; pursuant to Section 36 of the said Act, the master of the vessel filed a "Report of Desertion" with the Immigration Service.  Thereafter the defendant remained in this country, but his stay here was unlawful under the express provisions of Section 34 of the said Act.

II.   The defendant, on April 4, 1931, filed with the Immigration Service a verified "Application for Registry" under the Act of March 2, 1929.[c]  The applicant stated therein, "I have never (either in the United States or any other country) been arrested, summoned into court as a defendant, convicted, fined, imprisoned, or placed on probation,   *   *   * for an act involving a felony, misdemeanor, or breach of any public ordinance."  The defendant appeared before an Immigrant Inspector on May 5, 1931, and was examined under oath.  He was asked "Have you ever been arrested or subject to criminal or civil prosecution?", and in response to the question he answered, "No."  The hearing on the application was closed after a field investigation as to the applicant's place of residence; there was no other investigation made.

III.   The statements made by the defendant both in his application and on his oral examination were knowingly false.  The defendant had been previously arrested on five occasions:   thrice

*   Now 8 U.S.C.A. § 1451(a).

a.   See note p. 442.

c.   See note p. 443.

on a charge of homicide, once on a charge of felonious assault, and once on a charge of "unlawful possession of a revolver"; he was convicted on the last charge and sentenced to a term of imprisonment. The record before the Court discloses further that the defendant was tried and convicted on an indictment which charged him with "murder in the first degree"; however, the judgment was reversed and thereafter the indictment was dismissed on the motion of the District Attorney. The defendant wilfully and deliberately concealed his criminal record and thereby perpetrated a fraud upon the Immigrant Inspector and upon the Commissioner General of Immigration.

IV. The Immigrant Inspector, having determined that the defendant was "a person of good moral character," recommended that a Certificate of Registry be issued. There can be no doubt that the said determination and the recommendation based thereon were induced by the false testimony of the defendant; in fact, there was no other testimony before the Immigrant Inspector except that of two witnesses who testified generally that the defendant was a person of good moral character. Pursuant to the regulations then applicable, the "record of investigation" was transmitted to the Commissioner General of Immigration, who ordered that a record of registry be made. A formal "Record of Registry" was approved by the Commissioner General of Immigration on June 16, 1931. It clearly appears from the evidence, however, that the Record of Registry was induced by the fraudulent conduct of the defendant. The certificate of registry, having been fraudulently procured, was therefore void for all purposes. ·

V. The defendant filed a formal declaration of intention in the United States District Court, Eastern District of New York, on October 30, 1931, under the Nationality Act of 1906, as amended by the Act of March 2, 1929, 45 Stat. 1512.

There was annexed to the declaration of intention a Certificate of Arrival, which had its origin in the fraudulent record of registry, supra, theretofore established by the defendant. The defendant filed his petition for naturalization in the said court on December 27, 1933. It is noteworthy that in his preliminary petition he stated that he had been "convicted of misdemeanor in 1923," but he disclosed no other arrests except for traffic violations. This petition for naturalization was dismissed on February 28, 1935 on the written consent of the defendant after he had learned of the contemplated opposition by the District Director of Immigration and Naturalization.

VI. The defendant enlisted in the army of the United States and was inducted at Utica, New York, on July 30, 1942. Prior to June 29, 1943, when he was naturalized, the defendant was stationed at Indiantown Gap Military Reservation, Lebanon County, Pennsylvania. He was honorably discharged from the army of the United States on November 12, 1944.

VII. The defendant on March 18, 1943 filed a preliminary "Petition for Naturalization" with the Immigration and Naturalization Service. This petition was processed in the usual manner, and on April 28, 1943, a "Certificate of Arrival" was issued. Thereafter on June 29, 1943, the defendant filed a Petition for Naturalization in the Court of Common Pleas of the County of Lebanon, Pennsylvania, under the Nationality Act of 1940 as amended.[d] 56 Stat. 182, 50 U.S.C.A.Appendix, § 640, 8 U.S.C. 1942 Supp. § 1001. Pursuant to the provisions of the Act, and the regulations promulgated thereunder, the Certificate of Arrival was annexed to the Petition for Naturalization. 8 U.S.C.A. § 732 (c);[†] 8 C.F.R., Cum.Supp. 363.3, page 2793. The petition for naturalization was granted on this record, supported by the defendant's service record, and a certificate of naturalization was issued after formal hearing before the Court.

d. See note p. 443.

† Now 8 U.S.C.A. § 1445(a, b).

VIII. The Certificate of Arrival had its origin in the false record of registry, supra, theretofore made by the defendant, and therefore its use in the naturalization proceedings was a fraud upon the Court. The fraud tainted every step of the naturalization proceedings. The use of the Certificate of Arrival in the naturalization proceedings violated the penal provisions of the Nationality Act of 1940, 8 U.S.C.A. § 746(a) 16,** and was per se illegal.

### Discussion

▇ The defendant, an alien seaman within the meaning of the Immigration Act of 1917,[a] "landed" in the port of New York after he had deserted the vessel on which he was employed. He "landed" in violation of the provisions of the Act, and therefore his subsequent presence in the United States was unlawful under the express provisions of Section 34 thereof. United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; United States ex rel. Georgas v. Day, 2 Cir., 43 F.2d 917, 919; Domenici v. Johnson, 1 Cir., 10 F.2d 433, 436; see also the other cases hereinafter cited. The defendant, if not within a class excluded by the statute, may have been admissible as an immigrant but only upon compliance with the statutory requirements, to wit, payment of the head tax imposed by Section 2 thereof and submission to inspection required by Section 15 thereof.†† Ibid. When he "landed" in violation of the Act he evaded the statutory requirements prerequisite to "lawful admission."

▇ The express provisions of the Act precluded his deportation upon the expiration of the three year period of limitation therein prescribed, but the mere lapse of time did not convert his illegal entry into a lawful admission or his unlawful stay into a legal residence. United States ex rel. Stapf v. Corsi, United States ex rel. Georgas v. Day, Domenici v. Johnson, all supra. The defendant, however, was not without a remedy; if qualified for admission he could have legalized his entry and, incidentally, his residence, under the express provisions of Section 34 of the Immigration Act of 1917.[a] The defendant failed to adjust his status, and therefore his presence in the United States continued to be unlawful. Ibid.

▇ The defendant contends that he entered the United States lawfully as an alien seaman, but this contention is not supported by the evidence. However, even if we assume that the defendant was granted leave to "land," he acquired nothing more than a revocable privilege to remain here temporarily. The grant of "shore leave," under applicable regulations, was not "lawful admission," within the meaning of the Act. "Admission * * * is an act of the authorities, accepting the alien into the body of our inhabitants, not indeed as a citizen, but as a possible resident, whose stay may be permanent unless something unforeseen happens. A seaman who breaks his leave cannot therefore be said to have been 'admitted' ". United States ex rel. Georgas v. Day, supra, 43 F.2d 919. The contention, if supported by the evidence, would, therefore, not avail the defendant.

Prior to the enactment of March 2, 1929,[c] "An Act To supplement the naturalization laws," the status of the defendant, like that of others similarly situated, was anomalous; he was no longer subject to deportation after the expiration of the statutory period prescribed by the Immigration Act of 1917,[a] but he could not acquire "legal residence" for the purpose of naturalization until "lawfully admitted." See: Werblow v. United States, 2 Cir., 134 F.2d 791, 792; Subhi Mustafa Sadi v. United States, 2 Cir., 48 F.2d 1040; United States v. Kreticos, 59 App.D.C. 305, 40 F.2d 1020, 1021; In re Wieg, D.C., 30

** 18 U.S.C.A. § 1015.

a. See note p. 442.

†† Now 8 U.S.C.A. §§ 1351, 1223.

a. See note p. 442.

c. See note p. 443.

F.2d 418; In re Simmiolkjier, D.C., 71 F.Supp. 553; Ex parte Fillibertie, D.C., 62 F.Supp. 744; United States v. Parisi, D.C., 24 F.Supp. 414. The enactment of March 2, 1929, supra, was remedial legislation and, as we construe it, its provisions were available to "any alien" who fulfilled the conditions and met the qualifications therein prescribed.

The Act of March 2, 1929,[c] supra, amended the Nationality Act of 1906,[b] and authorized the nunc pro tunc registry of "any alien not ineligible to citizenship in whose case there is no record of admission for permanent residence," upon a "satisfactory showing to the Commissioner General of Immigration" that he met the qualifications therein prescribed. The alien was required to prove, in addition to other qualifications prescribed by the statute, that he was " 'a person of good moral character'." The Act authorized the issuance of a certificate of arrival, which was required under the naturalization laws, upon "the making of a record of registry". The Act enabled an eligible alien to establish his "lawful admission" and "permanent residence" for the purpose of naturalization.

■ Section 3 of the said Act specifically provided that for "the purposes of the *immigration* laws and the *naturalization* laws an alien, in respect of whom a record of registry has been made as *authorized* * * *, shall be deemed to have been lawfully admitted to the United States for *permanent residence* as of the date of his entry." (Emphasis by the Court.) It is clear that under this section a record of registry, if Lawfully Made, was sufficient to support a presumption of "lawful admission" and "permanent residence," prerequisites to naturalization. The certificate of arrival required by the naturalization laws was the documentary evidence upon which the presumption rested. United States v. Ness, 245 U.S. 319, 324, 38 S.Ct. 118, 62 L.Ed. 321. Section 2 of the said Act authorized the issuance of such a certificate on the application of the Commissioner of Naturalization.

■ The presumption of "lawful admission" and "permanent residence" was statutory and was invocable only by an applicant who, in accordance with the statute and the applicable regulations, had made a lawful record of registry. The statutory presumption could not rest on a fraudulent registry proceeding; a record of registry made in such a proceeding was unlawful and therefore void. A certificate of arrival which had its origin in a fraudulent proceeding was likewise void. Any other construction would indeed put a premium on the successful perpetration of frauds against the Government.

■ The application for registry, Paragraph II, supra, invoked the authority of the Commissioner General of Immigration to pass on the defendant's qualifications. It was therefore the duty of the defendant, under the regulations then applicable, to present such evidence as the nature of the inquiry required. It was his duty to fully and honestly disclose, both in his application and upon oral examination, his prior arrests and convictions. This evidence was relevant and material to the subject matter of the inquiry. Brenci v. United States, 1 Cir., 175 F.2d 90; Del Guercio v. Pupko, 9 Cir., 160 F.2d 799; United States v. Saracino, 3 Cir., 43 F.2d 76; Gaglione v. United States, 1 Cir., 35 F.2d 496; United States v. Goldstein, D.C., 30 F.Supp. 771. The statements made by the defendant, both in his application and upon oral examination, were wilfully false and were made with intent to deceive the Commissioner General of Immigration. The fraud thus perpetrated invalidated the registry proceeding. Ibid. This fraud was per se evidence as to the defendant's lack of good moral character. Del Guercio v. Pupko, supra.

The registry proceeding, which was patently fraudulent, must be regarded as a complete nullity for all purposes. The status of the defendant was not legally

**b.** See note p. 443.

**c.** See note p. 443.

adjusted and therefore his presence in the United States continued to be unlawful notwithstanding his colorable compliance with the requirements of the statute. If the defendant now finds himself in an inextricable dilemma it is clearly one of his own creation.

The defendant, while a member of the armed forces, filed a petition for naturalization, Paragraph VII, supra, under the Nationality Act of 1940, as amended by the Second War Powers Act,[d] 8 U.S.C. 1942 Supp. § 1001. The applicable provisions of the Nationality Act of 1940, as amended, are therefore determinative of the legality of the naturalization proceeding and of the validity of the certificate of naturalization which was granted the defendant.

The pertinent provisions of the amendment made the privilege of citizenship available to any alien member of the armed forces who, "having been *lawfully admitted* to the United States," was "a *resident* thereof" at the time of his "enlistment or induction". The amendment authorized the naturalization of such an alien upon his *"compliance with all the requirements of the naturalization laws"*, except those from which he was exempt under the specific provisions of the amendment. Such an alien was exempt from the provisions of Sections 331 and 307(a) (1) and (2) of the Act, 8 U.S.C. §§ 731 and 707(a) (1) and (2); * * * he was not required to file a declaration of intention or establish a "period of residence".

The amendment, as we construe it, required an applicant for naturalization thereunder to prove: first, that he had been "lawfully admitted to the United States"; and second, that at the time of his enlistment or induction he was a lawful "resident" thereof. An applicant, although relieved of the obligation to file a declaration of intention, was required to file a certificate of arrival as evidence of his lawful admission and legal residence. Section 332(c) of the Nationality Act of 1940, 8 U.S.C. § 732

(c); 8 C.F.R. 1941 Supp., 363.3. He was not exempt from this requirement of the naturalization laws. The certificate of arrival was therefore a prerequisite to his naturalization. United States v. Ness, 245 U.S. 319, 322, 38 S.Ct. 118, 62 L.Ed. 321, et seq; Maney v. United States, 278 U.S. 17, 22, 49 S.Ct. 15, 73 L.Ed. 156 et seq. We direct our attention first to this requirement.

The defendant stated in his petition for naturalization: "My lawful admission to the United States, * * *, was at New York, N. Y., under the name of Umberto Anastasio, on 9/12/17, on the SS Sardegna, as shown by the certificate of my arrival attached to this petition." The certificate of arrival annexed to the said petition had its origin in the fraudulent registry proceedings, Paragraph II, III and IV, supra. This certificate was void for the reasons hereinabove stated and its filing was not a compliance with the pertinent provisions of the naturalization laws, a condition prerequisite to the defendant's naturalization under the express provisions of the Nationality Act, supra. The certificate of arrival was per se specious and its use in the naturalization proceeding was nothing more than a colorable attempt at statutory compliance.

The defendant otherwise failed to meet the statutory requirements; he had not been lawfully admitted to the United States and therefore at the time of his induction he was not a resident thereof for the purpose of naturalization. See the cases hereinabove cited. The statutory qualifications, to wit, lawful admission and legal residence, had no existence in fact and could not have been lawfully presumed because the certificate of arrival upon which the statutory presumption necessarily rested was void.

It follows that the certificate of naturalization was illegally procured. It was held in United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 425, 61 L.Ed. 853: "No alien has the slightest right to naturalization unless all statu-

d. See note p. 443.

* Now 8 U.S.C.A. §§ 1427(a), 1445(f).

**442**

tory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it * * * and demand its cancelation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these nor render their existence nonessential."

■ The use of the certificate of arrival in the naturalization proceeding, knowing the same "to have been procured by fraud or by false evidence", was in itself a felony under the penal provisions of the Nationality Act of 1940, 8 U.S.C. § 746(a) (16), and a fraud upon the Court. This conduct of the defendant, if known to the Court at the time, would have justified the denial of the petition for naturalization. It would have been persuasive evidence that the defendant lacked the good moral character required by the statute as a prerequisite to naturalization. Stevens v. United States, 7 Cir., 190 F.2d 880, 881; Del Guercio v. Pupko, supra.

■ Where, as in the instant case, there was "no record of admission for permanent residence," the registry of the defendant under the Act of March 2, 1929,[c] supra, was a prerequisite to his naturalization and therefore an essential step in the proceeding. Therefore, the initial fraud of the defendant, although it had its genesis in the registry proceeding many years before, ultimately permeated and defiled the naturalization proceeding. This fraud invalidated the naturalization proceeding.

### Cancellation of Certificate of Arrival

The plaintiff was granted leave to amend the complaint so as to include therein a prayer for the cancellation of the certificate of arrival. This relief may be granted by the Attorney General under the express provisions of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1453. This prayer for relief is therefore denied but without prejudice to the right of the plaintiff to pursue the administrative remedy.

### Conclusions

I. The certificate of naturalization which was issued to the defendant was illegally procured for the reasons hereinabove stated.

II. The certificate of naturalization which was issued to the defendant was fraudulently procured for the reasons hereinabove stated.

III. The certificate of naturalization will therefore be cancelled.

IV. The plaintiff shall prepare and submit to the Court, on notice to the defendant, an appropriate order for judgment.

c. See note p. 443.

### NOTES

a. Pertinent Provisions of the Act of February 5, 1917, entitled "An Act To regulate the immigration of aliens to, and the residence of aliens in, the United States", 39 Stat. 874, 895 et seq.

"Sec. 32. That no alien excluded from admission into the United States by any law, convention, or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States, * * *."

"Sec. 34. That any alien seaman who shall land in a port of the United States contrary to the provisions of this Act shall be deemed to be unlawfully in the United States, and shall, at any time within three years thereafter, upon the warrant of the Secretary of Labor, be taken into custody and brought before a board of special inquiry for examination as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported * * *."

"Sec. 36. That upon arrival of any vessel in the United States from any foreign port or place it shall be the duty of the owner, agent, consignee, or master thereof to deliver to the principal immigration officer in charge of the port of

arrival lists containing the names of all aliens employed on such vessel, stating the positions they respectively hold in the ship's company, when and where they were respectively shipped or engaged, and specifying those to be paid off and discharged in the port of arrival; * * *; and after the arrival of any such vessel it shall be the duty of such owner, agent, consignee, or master to report to such immigration officer, in writing, as soon as discovered, all cases in which any such alien has illegally landed from the vessel, giving a description of such alien, together with any information likely to lead to his apprehension; * * *." [Now 8 U.S.C.A. §§ 1281, 1282, 1283, 1287.]

b. Pertinent Provisions of the Act of June 29, 1906, 34 Stat. 596, as amended by the Act of March 2, 1929, 45 Stat. 1512.

"Section 1 of the Act of June 29, 1906: "That it shall be the duty of the said Bureau to provide, for use at the various immigration stations throughout the United States, books of record, wherein the commissioners of immigration shall cause a registry to be made in the case of each alien arriving in the United States from and after the passage of this Act of the name, age, occupation, personal description * * *, the place of birth, the last residence, the intended place of residence in the United States, and the date of arrival of said alien, and, if entered through a port, the name of the vessel in which he comes. And it shall be the duty of said commissioners of immigration to cause to be granted to such alien a certificate of such registry, with the particulars thereof."

The substance of this provision is incorporated in Section 328(a) of the Nationality Act of 1940, 8 U.S.C.A. § 728(a), now 8 U.S.C.A. § 1230.

c. The Act of June 29, 1906, supra, was amended by the Act of March 2, 1929, supra. The pertinent amendments read as follows:

"That * * * the registry of aliens at ports of entry required by section 1 of the Act of June 29, 1906", supra, "as amended, may be made as to any alien not ineligible to citizenship in whose case there is no record of admission for permanent residence, if such alien shall make a satisfactory showing to the Commissioner General of Immigration, in accordance with the regulations prescribed by the Commissioner General of Immigration, with the approval of the Secretary of Labor, that he—

"(1) Entered the United States prior to June 3, 1921;

"(2) Has resided in the United States continuously since such entry;

"(3) Is a person of good moral character; and

"(4) Is not subject to deportation."

"Sec. 2. Upon the making of a record of registry as authorized by section 1 of this Act, the certificate of arrival required by the fourth paragraph of the second subdivision of section 4 of such Act of June 29, 1906, as amended, may be issued upon application to the Commissioner of Naturalization, in accordance with regulations prescribed by the Commissioner of Naturalization, with the approval of the Secretary of Labor, and upon payment of the fee prescribed by section 5 of this Act.

"Sec. 3. For the purposes of the immigration laws and the naturalization laws an alien, in respect of whom a record of registry has been made as authorized by section 1 of this Act, shall be deemed to have been lawfully admitted to the United States for permanent residence as of the date of his entry."

The substance of Sections 1 and 3 is incorporated in Sections 328(b) and (c) of the Nationality Act of 1940, 8 U.S. C.A. § 728(b) and (c). Now 8 U.S.C.A. § 1259. The substance of Section 2 is incorporated in Section 329(a) of the Nationality Act of 1940, 8 U.S.C.A. § 729 (a).

d. Pertinent Provisions of the Nationality Act of 1940, 54 Stat. 1137, 8 U.S.C. 1940 ed. §§ 501–907, as amended by the Second War Powers Act, approved March 27, 1942, 56 Stat. 182, 50 U.S.C.A. Appendix § 640, 8 U.S.C. 1942 Supp. § 1001. Now 8 U.S.C.A. § 1440.

Section 1001. "Notwithstanding the provisions of sections 703 and 726 of this title, any person not a citizen, * * *, who has served or hereafter serves honorably in the military or naval forces of the United States during the present war and who, *having been lawfully admitted to the United States*, * * *, *shall have been at the time of his enlistment or induction a resident thereof*, may be naturalized upon compliance with all the requirements of the naturalization laws except that (1) no declaration of intention and *no period of residence* within the United States or any State shall be required; * * *. The petitioner may be naturalized immediately if prior to the filing of the petition the petitioner and the witnesses * * * shall have appeared before and been examined by a representative of the Immigration and Naturalization Service." (Emphasis by the Court.)